Richmond

THOMAS LANE

v.

SARAH E. SCOTT, ADMINISTRATRIX OF THE ESTATE
OF EUGENE SCOTT, DECEASED

November 21, 1979.

Record No. 780278.

Present: All the Justices.

Jay T. Swett (*McGuire, Woods & Battle*, on briefs), for appellant.
S. W. Tucker (*Hill, Tucker & Marsh*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The dispositive issue on this appeal is whether, as a matter of the law of the case, appellant Thomas Lane was a joint tort-feasor liable in damages for the wrongful death of Eugene Scott.

The motion for judgment was filed by the decedent's mother, administratrix of his estate, against Lane and Carl E. Colvin, Jr.* After both parties had rested, the trial court found that "[t]here isn't too much dispute in the direct evidence" but that the "inferences and conclusions from the evidence do differ making it...a proper case for the jury". Upon that finding, the court overruled both motions to strike. On October 27, 1976, the jury returned a verdict for Lane, and the plaintiff moved to set the verdict aside. By order entered September 27, 1977, the trial court held that "Lane is liable to the plaintiff as a matter of law", set the verdict aside, and ordered that another jury be empanelled to assess damages. That jury awarded the plaintiff damages in the sum of $18,000, and the verdict was confirmed by final order entered December 1, 1977.

Lane assigns error to the order setting aside the first jury's verdict; the plaintiff assigns cross-error to an evidentiary ruling in the damage trial. No error is assigned to the evidentiary rulings or the rulings on instructions in the liability trial.

Colvin, a farm worker employed by Lane, lived with his wife and three children in a tenant house on Lane's farm. Returning from a shopping trip late one evening in December 1973, the Colvins saw a strange car parked near a woodshed at their home. As Colvin backed out of the driveway, the strange car followed and, with its horn blowing, pursued Colvin along the highway. After twice reversing his direction, Colvin arrived at Lane's home, told him what had happened, and asked him to investigate. Leaving Mrs. Colvin and the children

---

* The plaintiff was unable to serve Colvin with process, and Lane testified at trial that he did not know where Colvin was.

with Mrs. Lane, Lane took his .30 caliber rifle, and he and Colvin drove to the tenant house where they saw a light burning in the bathroom. Colvin, who could not remember leaving that light burning, entered the house and got his .22 caliber rifle.

Lane and Colvin then drove back to Lane's home, and Colvin left with his family. A short time later, Mrs. Colvin and the children returned, reported that the strange car was back, and asked Lane to "please go over there and help." Mrs. Colvin was "in hysterics" and the children "were all crying". Mrs. Lane called the sheriff, and Lane got in his pickup truck and drove to the tenant house.

As he entered the driveway, he saw the strange car facing him. Lane got out of his truck and "hollered" for Colvin. Colvin, standing behind a bush, answered, and Lane walked to the car where he saw what appeared to be a man "sleeping on the wheel." Knocking on the window and getting no response, Lane opened the car door and shook the man. The man grabbed Lane, tore his jacket, pushed him against the door, got out of the car, cursed Lane, and started to run. Colvin attempted to stop him, but the man struck Colvin in the face and knocked him down. Lane ordered the man to halt and fired his rifle "in the air". With Colvin in pursuit, the man ran behind the woodshed. Lane, who had gone back to his truck to "unjam" his rifle, followed and found the two men "scuffling" over Colvin's rifle. Colvin was "down on one knee". The other man was "over top of [Colvin], holding the rifle", and Lane "grabbed the fellow by the back of the neck" and "pulled him off". The man struck at Lane and Lane fell backwards to the ground. By the time he had gotten to his feet, the other two men had run a distance of approximately 150 feet. At this point, Lane thought he saw Colvin's arms "come up in the air". As Lane approached, Colvin was holding his rifle, which was broken into two pieces. The other man was lying on the ground. Lane could detect no pulse or breathing, and Colvin said that he supposed he had hit the man too hard with his rifle.

Realizing that there was a man "dead in the field and I was there with a gun", Lane "got scared" and "made up this story, trying to delete myself from being involved." At Lane's suggestion, Colvin "kicked in" the door of the house, and, when the deputy sheriff arrived, they told him that Colvin had chased an intruder from his home and that Lane had arrived only in time to see him running toward the woodshed. After consulting with his wife, Lane corrected the story in an interview with the officers the next morning.

The decedent, who was bearded, was identified as Eugene Scott. Scott once worked two weeks on Lane's farm and was clean-shaven

at that time. Lane testified that he had not recognized Scott until he saw his face in the light of the officer's flashlight. Lane further testified that he had not heard Colvin's rifle fire and that he had not learned until the officers told him the next morning that the cause of death was a bullet wound in the back of the neck. According to the pathologist who performed the autopsy, the entrance wound was located "just below the hairline and just to the right of the midline"; the bullet lodged in the brain, indicating that it had "traveled to the left and upward"; and, assuming that the "extraneous debris" found "[i]n and around the entrance wound" was gun powder, the shot was fired at close range, "somewhere around two feet, as a maximum."

We review this case upon the theory employed by counsel and the court below. The motion for judgment alleged that the two defendants were "each inciting, encouraging, aiding and abetting the other, with the common intention and unlawful purpose" of injuring Scott and that "[i]n the execution of such common intention and purpose, one of the defendants wrongfully and unlawfully shot and killed Eugene Scott". The trial court instructed the jury that "[t]here is no evidence" that Lane killed Scott. Under an instruction offered by the plaintiff and amended by the trial court, the jurors were directed to find for the plaintiff if they believed that Colvin "intentionally shot the decedent" and that Lane "was present, aiding and abetting in such shooting". "Aiding and abetting" was defined as "encouraging or inciting the commission of the unlawful act by words, gestures, looks or signs, or in some manner offering aid in its commission." The plaintiff assigns no cross-error to the instructions as given, and, indicating no approval, we consider them the law of the case.

■ Under Code § 8.01-430, a trial court is empowered in a civil action to enter judgment *non obstante veredicto* "upon the ground that [the verdict] is contrary to the evidence, or without evidence to support it".

"[This power] can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval."

*Commonwealth* v. *McNeely*, 204 Va. 218, 222, 129, S.E.2d 687, 689-90 (1963).

█ Where the evidence fairly supports multiple inferences, a trial judge ruling on a motion to strike must adopt those inferences most favorable to the party whose evidence is challenged, even though he may believe different inferences are more probable. *R. F. & P. Railroad* v. *Sutton*, 218 Va. 636, 643, 238 S.E.2d 826, 830 (1977). By the same logic, when conflicting inferences have been resolved by a jury and those necessarily underlying the conclusion reflected in the verdict are reasonably deducible from the evidence, a trial judge should not set the verdict aside.

Considering the motions to strike and finding that the "inferences and conclusions from the evidence do differ", the trial court ruled that this was "a proper case for the jury." We agree with that finding and that ruling; we disagree with the subsequent holding that "Lane is liable to the plaintiff as a matter of law."

On brief, the plaintiff argues that the evidence raises inferences that Lane "initiated the armed assault during which Scott was killed"; that Lane's warning shot "triggered Colvin's armed pursuit of Scott", a pursuit in which Lane "actively participated"; and that "there is no reason why [Lane] aided Colvin regain possession and control of [Colvin's] rifle other than that Colvin should use it against the intruder". Even if the inferences the plaintiff draws justify a conclusion that Lane was, in the language of the jury instructions, "present, aiding and abetting [Colvin] in such shooting", other inferences and a different conclusion are reasonably deducible from the evidence.

Specifically, we believe it is reasonable to infer that Lane's purpose in arming himself was not to initiate or incite an armed assault but to apprehend a stranger who had invaded his farm in the middle of the night and terrorized the family of his tenant; that Lane's warning shot, which he aimed into the air and not at Scott, was prompted by the same purpose; and that Lane's reason for intervening in the struggle was to rescue Colvin, who appeared to be in imminent peril, and to prevent Scott, who was attempting to seize Colvin's rifle, from using the weapon himself.

The plaintiff acknowledges that "there is no evidence that Lane gave verbal assent to the shooting." Indeed, it appears that there was no conversation whatever between Lane and Colvin from the time Scott fled from his car until he was killed. Nor do we find any evidence of "gestures, looks or signs" to compel a conclusion that Lane was "aiding and abetting" as defined in the jury instructions or that he shared the tortious intent alleged in the motion for judgment.

■ Going beyond the law of the case underlying the jury's verdict, the trial judge stated that the facts disclosed by the evidence, "coupled with the position of Lane as employer of Colvin indicates that Lane was a dominant factor in the whole episode." Pointing to that statement, the plaintiff contends on appeal that Lane was liable as a matter of law for Colvin's tort under the doctrine of *respondeat superior*. Such a theory of liability was never alleged in the motion for judgment, the trial judge refused the plaintiff's instruction based upon that theory, and the plaintiff assigned no cross-error to that refusal. Accordingly, we will not notice this argument on appeal. Rule 5:27.

Applying the law of the case, we are of opinion that the evidence and inferences reasonably deducible therefrom fairly support the conclusion reached by the first jury, and we hold that the trial court erred in setting their verdict aside. The judgment will be reversed, the first verdict will be reinstated, and final judgment for Lane will be entered here.

*Reversed and final judgment.*