# DARRYL CARTER

## v.

# CHRISTY LAMBERT

Record No. 921969

September 17, 1993

Present: All the Justices

*R. Clayton Allen* (*Allen, Allen, Allen & Allen*, on briefs), for appellant.
*William Orr Smith* for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

The sole question in this personal injury action is whether the trial court erred in setting aside the jury's verdict for the plaintiff and in entering judgment for the defendant.

This action arose out of a motor vehicle accident that occurred on September 8, 1989, about 4:15 a.m., on State Route 3 in Westmoreland County. The relevant portion of Route 3 is a two-lane paved highway with two solid yellow lines marking the center of the road. The posted speed limit is 55 miles per hour.

The plaintiff, Darryl M. Carter, along with several other passengers, was proceeding north on Route 3 in a commuter van driven by George Taylor, who was killed in the accident. The defendant,

Christy L. Lambert, was driving her automobile in the southbound lane of Route 3. A pickup truck, driven by an unidentified man, was traveling south in front of Lambert's car. Following behind Lambert's vehicle was a car driven by Janet Nash. There were no other vehicles on this part of Route 3 at the time of the accident.

The evidence is in conflict as to how the accident occurred; however, there is no dispute that the van left Route 3 and landed on its roof on adjacent property owned by Monroe Self. As a result of the accident, Carter sustained injuries that are the subject of this action.

Carter filed a motion for judgment against the administrator of Taylor's estate, Lambert, and John Doe. At trial, Carter presented the testimony of five other passengers in the van. Thomas W. Bailey testified that, just before the accident, he saw two cars approaching side by side, heading directly toward the van. After the van crashed, Bailey crawled out and went back to Route 3 to look for help but saw no one in either direction.

Melvin Butler testified that he saw two cars, side by side, approaching the van in the oncoming direction. One vehicle appeared to be passing the other; the car on the right was in the van's lane of travel. Butler also saw a vehicle driving some distance behind the two approaching vehicles.

Wanda D. Parker testified that she saw two sets of headlights approaching the van, and that one of the vehicles was attempting to pass the other. She stated that one set of headlights was coming straight toward the van.

Ellen R. Baker testified that she saw bright lights coming toward the van. She testified that the lights appeared to be directly in front of the van, causing the van to swerve to the right. Sandra A. Henry testified that she saw the headlights of two vehicles, one behind the other, coming toward them.

Carter testified that he saw two oncoming sets of headlights, approaching side by side. He testified that the set of headlights on the left was brighter and higher than the set on the right. Carter testified that the van swerved to the right and seemed to turn in midair before he lost consciousness.

Monroe Self testified that he was inside his house, with the windows closed, when he heard a noise "like a big bust of thunder," followed by people screaming. He went outside to render assistance while his wife called the rescue squad.

State Trooper Timothy A. Hatcher investigated the accident and found the van overturned in Monroe Self's yard. Hatcher testified

that the tire marks he found indicated that the van first had gone off the road to the right, then had returned to the road and swerved to the left, and finally had driven off the right shoulder of the road.

Hatcher also testified that he found a piece of a car's mirror on the road. He examined Lambert's car and found damage to the driver's side of the vehicle, including the side mirror. Lambert told Hatcher that the van struck her car, after which she pulled her vehicle over to the side of the road. However, Hatcher found no marks on the gravel shoulder of the road indicating that any vehicle had pulled over in this manner.

Carter also called Lambert as a witness. Lambert testified that, on the morning of the accident, she was driving to Warsaw to catch a bus to go to work. She testified that she was traveling at approximately 45 miles per hour and that there was a truck proceeding in front of her. Lambert also testified that a car driven by Nash, her co-worker, was traveling behind her.

Lambert testified that she noticed the van when it swerved into her lane, causing the pickup truck ahead of her to go off the road. She further testified that the van returned to its lane but crossed over into her lane again, sideswiping the driver's side of her car. Lambert stated that, at the time the driver began to lose control of the van, the pickup truck was in its proper lane and was not trying to pass any vehicle. She also testified that no vehicle was attempting to pass the truck.

Lambert further testified that, after sideswiping her car, the van went back to its lane of travel. She stated that she looked in her rear view mirror and could not see the van's lights. She then pulled her car to the side of the road. At that time, her car's right tires were on the gravel shoulder.

Lambert testified that the pickup truck also pulled off the road, and that two men got out of the truck and came over to see if she was hurt. After determining that she was not injured, they returned to the truck and drove away, without leaving their names.

Lambert also testified that Nash stopped her vehicle and walked over to talk to her. Lambert stated that she and Nash stood alongside the road for approximately 5 or 10 minutes and that they did not hear any people screaming. Lambert then drove to the bus stop and called her boyfriend but did not call the police. She testified that she and Nash did not discuss the accident while waiting for the bus, while riding on the bus, during work, or on the bus ride home. Nash's testimony corroborated Lambert's version of the events.

On cross-examination, when confronted with her deposition testimony that she had been driving at a speed of 55 miles per hour at the time of the accident, Lambert replied that she had not understood the question asked at the deposition. The question was: "Approximately how fast had you and the pickup truck been traveling during that time?"

Terry H. Dunaway, who drove the bus Lambert and Nash had ridden to work that day, testified that Lambert told her about the accident and stated that she had seen the lights of the van go over "like in the ditch." Another bus passenger, Peggy Carter, testified that Lambert said that "she saw the lights of the van go up in the air two or three times."

Before submitting the case to the jury, at Carter's request, the trial court reduced the amount sued for to $45,000. The jury returned a verdict for defendants Taylor and Doe and against Lambert for $58,500. Lambert renewed her motion to strike the evidence and moved to set aside the jury's verdict. The trial court ruled that, as a matter of law, the evidence failed to establish that Lambert was guilty of negligence that was the proximate cause of the accident. The trial court sustained Lambert's motions and entered judgment in her favor. This appeal followed.

■ Carter argues that the trial court erred in setting aside the jury's verdict because it is supported by credible evidence. In reviewing the evidence, we first note that well-settled principles govern the trial court's authority to set aside a jury's verdict. In *Lane v. Scott*, 220 Va. 578, 260 S.E.2d 238 (1979), we summarized these principles, stating that:

> Under Code § 8.01-430, a trial court is empowered in a civil action to enter judgment *non obstante veredicto* "upon the ground that [the verdict] is contrary to the evidence, or without evidence to support it."

>> [This power] can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable [persons] may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely

because he would have voted for a different verdict if he had been on the jury.

*Id.* at 581, 260 S.E.2d at 240 (citation omitted)(quotation marks omitted).

▪ Thus, the role of the trial court at that stage of the proceedings is explicit and narrowly defined. Further, on appeal, if there is credible evidence in the record supporting the jury's verdict, we must reinstate the verdict and enter judgment thereon. *Wooldridge v. Echelon Serv. Co.*, 243 Va. 458, 461, 416 S.E.2d 441, 443 (1992); *Rogers v. Marrow*, 243 Va. 162, 166, 413 S.E.2d 344, 346 (1992).

Lambert argues that the trial court did not err in setting aside the verdict because no evidence showed that she ever left her lane of travel. In response, Carter argues that the jury was entitled to accept the testimony of the van's passengers, who testified that an oncoming vehicle in the van's lane was attempting to pass another vehicle, as well as Carter's testimony that the vehicle being passed had higher and brighter headlights. Further, it is undisputed that there were no other vehicles on the road, except for Nash's vehicle, which was farther back in the southbound lane. Therefore, Carter contends that the jury reasonably could have concluded that Lambert's vehicle sideswiped the van while attempting to pass the truck. We agree with Carter.

▪ It is the jury's function to determine the credibility of witnesses and the weight of the evidence and to resolve all conflicts in the evidence. *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57, 419 S.E.2d 627, 630-31 (1992). Here, the jury heard conflicting evidence as to whether any vehicle crossed over into the van's lane of travel. Further, as noted above, Lambert's testimony was impeached on several issues by her own deposition testimony and by the testimony of other witnesses. Thus, the jury reasonably could have believed the testimony of the van's passengers and disregarded Lambert's conflicting testimony that no vehicle was attempting to pass another at the time of the accident.

▪ In addition, Carter's testimony, that the vehicle being passed in the southbound lane had higher and brighter headlights than the vehicle attempting to pass it, was evidence from which the jury reasonably could have concluded that Lambert was attempting to pass the pickup truck. Further, after considering that Lambert's car had received damage to its left side, as well as to its driver's side mirror, the jury reasonably could have concluded that Lambert's

vehicle had crossed over into the van's lane of travel and struck it while attempting to pass the truck.

■ For these reasons, we hold that there is credible evidence supporting the jury's verdict.* We will reverse the judgment of the trial court and reinstate judgment in favor of Carter. Because the jury's verdict was greater than the amount sued for, we will enter judgment for Carter in the amount of the relief he requested.

*Reversed and final judgment.*

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

"Like presumptions, inferences are never allowed to stand against ascertained and established facts." *Ragland* v. *Rutledge*, 234 Va. 216, 219, 361 S.E.2d 133, 135 (1987). An inference that a plaintiff contends would impose liability upon a defendant must give way to "positive, uncontradicted evidence" which exonerates the defendant from liability and which "demonstrates that the inference is based upon speculation and conjecture." *Id.* And, where a plaintiff calls a defendant as an adverse witness, the plaintiff is bound by so much of the defendant's testimony that is clear, reasonable, and uncontradicted, and not in conflict with the evidence presented by the plaintiff. *Weddle* v. *Draper*, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963).

Called as an adverse witness, the defendant testified that she was following a pickup truck when she noticed the oncoming van "come over in the truck's lane." The van then "went back over to the other side of the road" and "come back on my side of the road

---

* This case is distinguishable from *Ragland v. Rutledge*, 234 Va. 216, 361 S.E.2d 133 (1987), in which this Court held that the jury had based its verdict on an impermissible inference. In *Ragland*, the jury was not presented with contradictory or conflicting testimony. It heard no evidence suggesting that either vehicle crossed into the other's lane and caused the accident; rather, each driver simply testified that he remained in his own lane. *Id.* at 217-18, 361 S.E.2d at 134. Although the plaintiff in *Ragland* argued that the mere fact of impact created an inference that the defendant was partially in the wrong lane, this Court concluded that such an inference was impermissible, given the unrebutted testimony that each vehicle was in its proper lane. *Id.* at 218-19, 361 S.E.2d at 135. In contrast, in the present case, Lambert's testimony conflicted with that of the van's passengers regarding how the accident occurred, and her testimony regarding her other actions that day was impeached. Thus, unlike the jury in *Ragland*, the jury here was not required to speculate in order to conclude that Lambert was negligent.

and sideswiped my car,'' according to the defendant. The defendant testified that, at all relevant times, she was operating her vehicle within her proper lane of travel and within the speed limit. The witness Janet Nash, who had been operating her vehicle immediately behind defendant, testified that defendant never left her proper lane of travel, never passed another vehicle, and never had anyone pass her.

Confronted with this positive, uncontradicted testimony, the majority allows inferences (drawn from testimony about unidentified headlights approaching the van) to stand against ascertained, established facts about defendant's position on the highway at the time of the accident. The majority's footnote argument that *Ragland* is inapposite because defendant's testimony "conflicted with that of the van's passengers regarding how the accident occurred" misses the point. The crucial fact is whether defendant's vehicle ever strayed from its proper lane, not generally "how the accident occurred." Only by drawing inferences that are at odds with uncontroverted testimony can the defendant's vehicle be placed in the van's lane of travel.

As the trial court pointed out, the accident "was caused either by the van for some unknown reason running off the road to the right, and thereafter going out of control, or by the van being forced off the road by some other vehicle. If it was forced from the highway, it probably was the vehicle of either Doe, Lambert, or Nash that did so, but it is not shown in this record which of them it was.'' Thus, any finding of a jury that the defendant was guilty of negligence proximately causing the accident necessarily must be based on conjecture and speculation.

Accordingly, I would affirm the judgment below.