## CIRCUIT COURT OF WESTMORELAND COUNTY

Melka Marine, Inc.

v.

Town of Colonial Beach

May 24, 1995

BY JUDGE JOSEPH E. SPRUILL, JR.

This action for breach of contract was tried before a jury which returned a verdict in favor of the plaintiff, Melka Marine, Inc., against the Town of Colonial Beach, in the amount of $64,755.50 and attorney's fees of $20,000.00. Following the verdict, the Town moved (1) for judgment notwithstanding the verdict pursuant to Virginia Code § 8.01-430; (2) to strike the evidence as to attorney's fees; and (3) for sanctions against Melka and its counsel pursuant to Virginia Code § 8.01-271.1. Rulings on these motions follow.

### I. *Motion for Judgment Notwithstanding the Verdict*

We have here no significant factual disputes. The issue is one of interpretation of the contract.

In January, 1993, the Town entered into a contract with Melka, wherein Melka agreed to replenish a beach area within the Town with sand for which the Town was to pay Melka $254,406. Various delays attended Melka's work, and in the late summer or early fall of 1993, Melka assumed it had completed its work and left the job. It does not appear that Melka formally notified the Town. By this time, the Town had paid Melka $189,750.49, leaving a balance due under the contract of $64,755.50.

The Town claimed Melka had not completed the contract and refused to pay the balance. In November, 1993, Melka filed this action (claiming, erroneously, that the contract required payment by the Town of $424,340.42.) Melka sought judgment for $234,589.93, representing the

contract balance of $64,775.50 and what it refers to as "additions" of $168,879.00. The Court at an early stage struck the "additions" claim.

The central issue in dispute is what Melka agreed to do under the contract. Specifically, the Town claimed that Melka agreed to spread sand to the level of certain templates across five zones of approximately 1,600 feet of beach area, as shown on plans and survey drawings which were a part of the contract. Melka claimed that it was only required to furnish and place "14,000 yards of sand."

Melka prepared the contract in question with help from its counsel, Mr. Peter Paul Mitrano, who is one of three members of its Board of Directors. It is a four-page document with various attachments consisting of letters, bid documents, surveys, and drawings from the Army Corps of Engineers, etc. Paragraph 2 of the contract provides: "Melka Marine, Inc., shall furnish and place approximately 14,000 yards of sand . . . . All work to be as per the contract documents." Paragraph 3 of the contract requires completion by May 1, 1993.

Melka's evidence was that it purchased 18,268 tons of sand between February and August, 1993; that this sand was brought to the contract site and placed; that this amounted to 14,095 cubic yards; and that this is all the contract required of it.

The Town countered that the contract specifically required sand to be placed to the level as designated across all five zones; that the invitation to bid made this clear; that at the meeting of bidders, the representative from the Army Corps of Engineers made this clear; that the plans and surveys were part of the contract, and these made clear the work that was to be accomplished; that Melka's own bid notes reflected that it had calculated it would take 20,000 cubic yards to do the job, and it had computed its bid on this basis; that Melka never indicated to the Town at any time that it construed the contract as it now contends; and that, in any event, 18,268 tons (which Melka purchased) does not equate to 14,000 cubic yards.

(This latter point involves converting tons to cubic yards. There was no agreement among the experts as to how to do this.)

The authority conferred by Virginia Code § 8.01-430 upon a trial court to set aside a jury verdict and enter judgment thereon can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had

been on the jury. *Lane v. Scott*, 220 Va. 578 (1979); *Carter v. Lambert*, 246 Va. 309 (1993).

Here the jury apparently accepted the testimony of Melka and ignored or disregarded his bid notes, the contract drawings, and the testimony of witnesses for the Town and the Army Corps of Engineers. This was within the jury's province. The Court cannot say that Melka's testimony is incredible, and that is the standard required. Adhering to the holdings in *Lane* and *Carter*, the motion for judgment notwithstanding the verdict is denied.

## II. *Motion to Strike Award of Attorney's Fees*

At trial, Melka's counsel, Mr. Mitrano, took the stand and testified as to his attorney's fees incurred in this litigation. He testified that he charged at the rate of $190 per hour and that his fees amounted to $235,000. Mr. Mitrano produced an expert witness, Mr. Michael Doherty, a licensed Virginia attorney from Arlington, who opined that this was a reasonable fee. On cross-examination, Mr. Mitrano conceded that this amount covered all his time devoted to the case, not just the amount of time collecting the contract balance. The contract provides that fees associated with "collection of monies on the contract" may be recoverable. The fees requested included time devoted by Mr. Mitrano to pursuit of the claim referred to as "additions," which claim was struck at an early stage and was not part of the contract sued on. The fees requested also included time devoted to defense of the counterclaim. Further, Mr. Mitrano testified that he works out of his home in New Hampshire; that he has no secretary or legal assistant, and that he does his own typing. Typing time was billed also at $190 per hour, which Mr. Mitrano justifies by contending that as he types, he is "thinking about the case."

Mr. Mitrano's only evidence of fees presented to the jury was the claim of $235,000. He failed to present any evidence of the time devoted solely to the collection of the contract balance, nor did he offer any evidence of the amount of clerical time spent typing the various papers, which are voluminous. He presented no evidence that $190 is a reasonable hourly rate under the circumstances in Westmoreland County.

After plaintiff rested and at the conclusion of all the evidence, the defendant moved to strike the claim for attorney's fees, which motion was taken under advisement. The jury awarded $20,000 in attorney's fees.

This award can only be based on guesswork or speculation. The jury had no evidence whatever of the amount of time devoted by Mr. Mitrano

solely to the pursuit of the contract balance. The motion to strike the claim of attorney's fees previously taken under advisement is granted, and the jury's award will be set aside.

### III. *Sanctions under § 8.01-271.1*

Finally, the Town has asked for sanctions pursuant to Virginia Code § 8.01-271.1 against Melka and its attorney. This is an unpleasant matter for the Court to address.

In considering this issue, it must be borne in mind that this was a rather uncomplicated action on a contract in which there was a single, straightforward issue: had Melka performed the contract. Even the counterclaim involved the same issue.

What was and should have remained a relatively minor dispute has been escalated into a proceeding far out of proportion to what was at stake.

Mr. Mitrano's pretrial activity was voracious. He submitted three separate sets of interrogatories; he propounded a total of 329 requests for admissions. Depositions extended over days. (On one occasion during which the Town was attempting to depose a Melka witness, the Town complained that Mr. Mitrano interposed an excessive number of objections and indeed had dialogue and objections on 236 pages out of a total of 283 pages.) Mr. Mitrano filed approximately twenty pretrial motions. They will not all be listed here, but a sampling will be instructive.

The case was initially filed in Fairfax County. The Town moved to transfer venue, and the Fairfax Court graciously obliged. The file reached Westmoreland on January 31, 1994. On February 4, 1994, Melka filed a Motion for Summary Judgment and two Motions to Compel. On February 8, Mr. Mitrano moved for Judgment on Affidavit. On February 14, he moved for reconsideration of the order changing venue. Thus begun, the parties have been trudging through seemingly endless series of motions and hearings with unrelenting regularity ever since.

The defendant filed a request for a date certain to file responsive pleadings. Melka objected. When dates were set, Melka filed a motion to vacate the order. When the Town moved to have someone designated to speak for the plaintiff corporation, Mr. Mitrano objected, having himself made the same request of the Town. On May 18, 1994, Mr. Mitrano filed a "Motion for Order that defendant's counsel refrain from kicking witness while testifying." And so it went.

This Court, of course, has some responsibility for the orderly processing of cases pending on its docket. In this matter, we had a number of pretrial

hearings, during which counsel were often reminded of the need for reasonableness. But once set in motion, it seemed well-nigh impossible to contain the course of this litigation.

In October, 1994, I wrote to counsel, noting in rather an understatement that the case is "somewhat out of hand." Counsel was undaunted.

In December, 1994, counsel were before me in chambers for a hearing on additional motions. Following that session, I again reminded counsel of what was at stake and requested that they each review the matter and consider a realistic settlement. The Town had indicated its willingness to settle throughout, rather than to continue to incur mounting legal costs. Following this meeting in chambers, on February 16, 1995, Mr. Mitrano wrote to Mr. Saunders, counsel for the Town, offering to settle for $483,477.56. Mr. Saunders filed this letter with the court as an "other paper" signed by counsel within the scope of § 8.01-271.1. Included in Mr. Mitrano's settlement demand were the $64,775 contract balance, the $168,879 "additional costs" claim which had been previously struck, attorney's fees of $97,603, interest, plus additional attorney's fees "projected through signing of settlement of $115,000."

Thus, the Town, approximately two months before trial, faced with a maximum exposure of $64,775 plus reasonable attorney's fees is asked by Mr. Mitrano for $483,477.56 to settle the case.

Upon being notified of this development, the Court wrote counsel on March 8: "Given what is at stake in this case and what has transpired thus far, it is reasonable to expect that sanctions will be awarded." Further: "I ask you both to make known to your clients, if you have not already done so, these views of the Court, so that if and when sanctions are awarded, no one will be surprised."

It was apparent to the Court from the early stages that from Melka's perspective, this proceeding was more about attorney's fees than about the contract, and this is, in my opinion, the source of the problem.

There can be no rational justification for much that Melka and Mr. Mitrano have done in handling this case. By any objective standard, a substantial part of their effort has been unnecessary and unreasonable. The case file is approximately two feet thick, compelling evidence of overkill. Whatever the intended purpose of this strategy may have been, its primary consequence has been to needlessly increase the cost of this litigation. Mr. Mitrano's personal testimony, under oath, of the fees he himself claimed to have incurred establishes, beyond any doubt, this fact.

The Court finds that Melka Marine, Inc., and Mr. Mitrano as its counsel have violated both the letter and the spirit of § 8.01-271.1, by needlessly increasing the cost of this litigation. I find that both are equally complicitous. Counsel for the Town have in no way provoked or otherwise been responsible for the plaintiff's activities complained of. Indeed, counsel for the Town have demonstrated at times remarkable forbearance.

Therefore, sanctions should be awarded against both Melka and Mr. Mitrano in favor of the Town. The Town has complained that it has expended approximately $120,000 in defense of this $65,000 case. It estimates, modestly in my view, that at least $30,000 was directly attributable to Melka's oppressive tactics.

To a citizenry already skeptical and perhaps at times disillusioned with our system of justice, the tactics employed in this case by the plaintiff and its counsel give encouragement to those who would hold our profession and our system up to scorn and ridicule. Such tactics must not be tolerated.

For these reasons, sanctions pursuant to § 8.01-271.1 are awarded in favor of the Town against Melka and Mr. Mitrano in the amount of $30,000.