UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, AtLee and Senior Judge Haley
Argued at Richmond, Virginia


OSCAR O. OZFIDAN

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1265-14-2                        JUDGE RANDOLPH A. BEALES
                                                    MAY 5, 2015

PAMELA L. OZFIDAN


                    FROM THE CIRCUIT COURT OF HENRICO COUNTY
                               Catherine C. Hammond, Judge

              A. Russell Watson (Hairfield Morton, PLC, on briefs), for
              appellant.

              Misty D. Evans (Law Office of M.D. Evans, PLLC, on brief),
              for appellee.


        The circuit court entered a final decree on June 9, 2014 granting Pamela L. Ozfidan (wife) a

divorce from Oscar O. Ozfidan (husband).  Husband appeals several rulings from the final decree

relating to equitable distribution and spousal support.  For the following reasons, we affirm in part,

reverse in part, and remand the matter to the circuit court for further proceedings consistent with this

opinion.

                                    I.  BACKGROUND

        Under settled principles of appellate review, we view the evidence in the light most

favorable to wife, as the party prevailing below, Chretien v. Chretien, 53 Va. App. 200, 202, 670

S.E.2d 45, 46 (2008), and we grant to wife "all reasonable inferences fairly deducible

therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).  The

parties were married in Texas in 1998, when husband was pursuing his doctorate in economics.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Wife worked in an advertising position for a local newspaper at that time, while husband earned some additional income as a teaching assistant. The parties moved to Richmond when husband accepted a position as an economist for the Commonwealth of Virginia. Wife worked as a flight attendant until her pregnancy with the parties' twin children, who were born in November 2005. Wife was put on bed rest for nine weeks prior to giving birth, and the children were born premature. The parties agreed that wife would be a stay-at-home mother until the children started school.

The parties encountered financial difficulty during the marriage, requiring husband at times to take a second job. The record on appeal discloses a significant amount of marital credit card debt. In addition, the parties owed the lender more money than the marital home's assessed value. Wife testified that husband handled the family's finances. She testified that, while she was aware that she was an account holder for "a few different cards," she did not realize until the divorce litigation between the parties that there were other credit cards taken out in her name that had high balances.

According to wife's testimony, husband committed acts of physical abuse against her "every couple of years" from the start of the marriage, including a time when their children were three when "he beat me up" and their "daughter walked in on that." Wife testified that she told husband that she would leave if he abused her again. Wife testified that she was again physically abused about two years later, during the overnight hours of March 3-4, 2012. Wife testified:

> [Husband] [k]nocked me out of the bed at night, I was asleep. I hit the wall. He poured wine all over me. . . . I was on the other side of the bed and I tried to run around to get out. And then he started to hit me in, I guess, my face and I put my arms up and that's when he broke my arm. And then I fell to the ground and he was kicking and kicking me a long time. And then he just gave up and passed out pretty much.

A friend took wife to the hospital, where she was diagnosed with an ulnar fracture. Wife obtained a two-year protective order against husband and was granted exclusive possession of the marital home.

Wife soon discovered while at a restaurant with the parties' children that she could no longer use the credit card or the debit card that she used for everyday expenses. She learned that husband had closed certain accounts to which wife had access during the marriage. He brought $200 to $300 in cash to wife at the friend's house where wife was staying temporarily. Husband paid the marital home's mortgage and utilities for a short time until wife assumed possession of it.

Wife sought and began receiving spousal support after filing a petition for maintenance in the Henrico County Juvenile and Domestic Relations District Court (JDR court) following the parties' separation. See Code § 16.1-241(L). Wife also sought child support in the JDR court.[1] She later testified during the evidentiary hearing of the parties' divorce case in circuit court that she received $2,500 per month of "support" under the JDR court's order – although she was unsure how much of that amount was for spousal support and how much was for child support.[2]

Wife filed a divorce complaint in the circuit court on April 30, 2012, alleging that husband had committed the fault ground of cruelty. See Code § 20-91(A)(6). Wife did not seek an award of spousal support in the divorce complaint. She instead requested in her complaint that spousal support and matters relating to the custody and support of the children remain in the JDR court. The circuit court conducted an evidentiary hearing on November 25, 2013 that

---

[1] Child support is not a contested issue on appeal to this Court.

[2] While the circuit court did hear husband's *de novo* appeal from the JDR court's award of spousal support to wife, neither the transcript of the circuit court's March 10, 2014 hearing pertaining to that spousal support litigation nor any order entered memorializing its rulings from that March 10 hearing has been included in the record on appeal to this Court.

addressed the grounds for divorce and equitable distribution.[3]  Husband appeared *pro se* at the

evidentiary hearing, although he had been represented by an attorney earlier in the divorce

litigation and later would retain a different attorney (his current counsel) after the evidentiary

hearing.

On December 11, 2013, the circuit court issued a letter opinion finding that the divorce

"will be entered on the grounds of cruelty."[4]  The circuit court also found as fact that "the parties

did not live within their means"; that they "have substantial debt"; that the marital residence "is

worth less than the deed of trust note"; that wife's mortgage payments "since separation have

reduced the principal debt by $4,000"; and that wife sought to sell the residence whereas

husband wanted to be awarded it (although he planned to sell it immediately after receiving it in

equitable distribution).  After itemizing the marital property and marital debt and their respective

values,[5] the circuit court found:

---

[3] The circuit court raised the issue of spousal support *sua sponte* near the conclusion of the November 25, 2013 evidentiary hearing.  However, the circuit court then noted that wife's claim for spousal support in the JDR court was brought as an independent action under Code § 16.1-241(L).  See, e.g., Martin v. Bales, 7 Va. App. 141, 145-46, 371 S.E.2d 823, 826 (1988) ("Orders of the district court requiring support of a spouse remain in full force and effect until reversed or modified by the court to which an appeal has been perfected, or until the entry of a decree in a suit for divorce instituted in a circuit court, in which decree provision is made for spousal support.").

[4] Husband has not appealed the circuit court's finding that husband was guilty of cruelty against wife.

[5] By far the most valuable asset considered was husband's state government "457" deferred compensation retirement account, which was valued at $55,517.  The next most valuable asset was a 2003 BMW driven by wife, which was valued at $7,000.  The value of the marital residence was $197,000, but the amount owed on its deed of trust note was $198,342. Credit card debt totaled $36,606.  The circuit court apportioned $3,500 of that credit card debt to wife, while holding husband responsible for the remainder of the credit card debt.  The circuit court also referred in its letter opinion to a diamond ring (which the parties purchased as an investment) and to some gold (which was a gift from husband's mother in Turkey).  Wife testified that the ring and the gold were missing when she returned to the marital residence after permitting husband to get some belongings from there.  Prior to trial, husband initially denied taking the ring and the gold, but he then conceded that he might have inadvertently taken the ring

There were marital assets in existence at separation that are no longer available for distribution. Husband kept a Ford truck that was worth $4,900. There were three VACU accounts, including two for the children, with $3,663 in cash. Husband took that money. There was gold worth $9,000. Husband took the gold. He also took the diamond ring. There was an Ameritrade account with a $4,053 balance. Husband took that money.

All of the factors in Va. Code § 20-107.3 have been considered. There is very little property to divide. Husband made the majority of the positive monetary contributions, but these are negated by the installment debt of more than $35,000. Husband committed waste of marital property after separation. Husband's misconduct led directly to the dissolution of the marriage.

The assets and debts are distributed as follows. The house will be listed for sale. If any profit is obtained it is distributed to Wife. Wife will continue to make the payments on the note up until the date she moves out. The furnishings and the diamond ring are distributed to Wife. The BMW is distributed to Wife. The Wife's IRA is distributed to Wife. The Husband's IRA ($3,082) will be rolled over to an IRA for Wife. The marital portions of Husband's VRS pension and his 457 plan and 401 plan will be divided with 60% to Wife,[6] by an Order acceptable to the VRS plan administrator. The Ameritrade account is distributed to Husband. Husband will make a lump sum payment to Wife of $12,000 to restore to her a part of the marital funds depleted by his waste. The Citibank credit card account no. 2677 is distributed to Wife. The remaining debts are distributed to Husband.

Husband, through counsel, filed a motion to reconsider. The circuit court held a hearing on that motion on February 18, 2014. At that hearing, the circuit court noted husband's argument that the court "didn't give good reasons" when it explained its equitable distribution rulings in the letter opinion. The circuit court said, "Here's the thing that I think you should

---

when wife presented evidence that he had attempted to sell the ring on the internet. Husband maintained that he did not take the gold, valued at $9,000, even though he acknowledged loaning a friend $10,000 to assist with that friend's business venture.

[6] At a hearing on February 18, 2014, the circuit court stated that the letter opinion contained a clerical error to the extent it awarded wife more than half of the marital share of husband's retirement accounts. See Code § 20-107.3(G). In the final divorce decree, wife was awarded fifty percent of the marital share of husband's retirement assets.

understand is; I gave some reasons. There was more, but sometimes it's like throwing gas on a fire when you write these letters." The circuit court stated that it did not mention in the letter opinion that husband had loaned $10,000 to his roommate "without a note, without any reason for doing it." The circuit court also said later in the hearing that it would "amplify the findings of fact to say that the evidence at trial showed that the husband's conduct caused a dissipation in the marital funds in anticipation of the divorce and there was waste."

At the February 18, 2014 hearing, husband's counsel also asked the circuit court to re-open the issue of spousal support. He indicated that husband sought to argue that wife's spousal support award should be limited to a defined duration. See Code § 20-107.1(C) ("The [circuit] court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof."). The parties' attorneys informed the circuit court that husband's *de novo* appeal from the JDR court's award of spousal support to wife had been docketed for a hearing in the circuit court on March 10, 2014. The circuit court stated, "All right. Well, I'm persuaded that this is a valid objection. I think that should be set back on the docket for determination of spousal support to be included in the final decree." Thus, the circuit court essentially continued the divorce matter pending that hearing on March 10, 2014. However, the record does not include the transcript of the March 10 hearing or any written orders from the circuit court that arose from that March 10 hearing.[7]

---

[7] The record does contain a June 4, 2014 order to show cause directing husband to "show cause, if any there be, why he should not be adjudged in contempt for his alleged failure to comply fully with the order of this Court entered on March 10, 2014." It appears from wife's March 16, 2014 "Motion for Order to Show Cause" and from the circuit court's June 9, 2014 final decree that the show cause order arose from husband's failure to satisfy certain terms of the December 11, 2013 letter opinion, including the payment of wife's attorneys' fees and costs.

- 6 -

On May 19, 2014, husband filed a "Motion to Decree Spousal Support" in the circuit court.

On June 9, 2014, the circuit court entered its final divorce decree. Among its rulings, the circuit court judge wrote by hand on the final decree, "Defendant [i.e., husband] moved for an award of spousal support which motion was overruled as Plaintiff's pleadings never requested spousal support. Defendant objects."

## II. ANALYSIS

Husband initially raised ten assignments of error on appeal to this Court. On brief, husband has withdrawn four of his assignments of error. Husband's remaining assignments of error allege:

> 1. The Court erred by failing to determine legal title of the property of the parties in accordance with Va. Code § 20-107.3(A) and as a consequence ordered, among other things, that the defendant transfer an individual retirement account, marital property which is not jointly owned, to the plaintiff in violation of Va. Code § 20-107.3(C).
>
> 4. The Court erred by failing to articulate any reasons under the statutory factors to justify awarding the plaintiff approximately 75% of the marital property (exclusive of deferred compensation and retirement benefits).
>
> 5. The evidence failed to support and the Court abused its discretion by awarding the plaintiff approximately 75% of the marital property (exclusive of deferred compensation and retirement benefits) in light of its finding that the defendant made the majority of the positive monetary contributions during the marriage, by erroneously placing too much emphasis on the installment debt of more than $35,000 incurred by the defendant when it also apportioned the aforesaid debt to the defendant, and by erroneously placing too much emphasis on the defendant's misconduct leading to the dissolution of the marriage which was not shown to have an economic impact on the value or the identity of the property or directly affect the nonmonetary factors of the statute.
>
> 6. The Court erred by failing to articulate any reasons under the statutory factors to justify apportioning to the defendant nearly 90% of the marital debt.

8. The evidence failed to support and the Court abused its discretion by apportioning to the defendant nearly 90% of the marital debt in light of its finding that the defendant made the majority of the positive monetary contributions during the marriage and by failing to consider the purposes for which the debt was incurred.

10. The Court erred in finding that it lacked authority to decree spousal support because the plaintiff did not request it in her pleadings.

## A. EQUITABLE DISTRIBUTION

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). This Court will not reverse an equitable distribution award "[u]nless it appears from the record that the [trial court] has abused [its] discretion," that the trial court "has not considered or misapplied one of the statutory mandates," or "that the evidence fails to support the findings of fact underlying [the] resolution of the conflict." Keyser v. Keyser, 7 Va. App. 405, 410, 374 S.E.2d 698, 701 (1988) (quoting Brown v. Brown, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987)).

### Transfer of Husband's IRA

In his first assignment of error, husband argues that the circuit court erred when it ordered the transfer of husband's IRA. The record establishes that, while this IRA is marital property, it is titled solely in husband's name. During oral argument before this Court, wife's counsel conceded that the decision to order a "rollover" of husband's IRA into an IRA owned by wife was reversible error under Code § 20-107.3(C) because husband's IRA is not jointly titled property.[8] We accept

---

[8] Code § 20-107.3(C) states, in pertinent part:

Except as provided in subsection G, the court shall have no authority to order the division or transfer of separate property or

- 8 -

wife's concession as appropriate under the circumstances of this case.  See Linton v. Linton, 63

Va. App. 495, 500, 759 S.E.2d 14, 16 (2014) ("Code § 20-107.3(C) specifically prohibits the

[circuit] court from dividing or transferring property which is not jointly owned.").

Therefore, we must reverse the circuit court's order to transfer the IRA that is titled solely

in husband's name.  Accordingly, we remand the matter to the circuit court for it to reconsider

the equitable distribution of this marital asset.

<u>Consideration of the Code § 20-107.3(E) Factors</u>

Husband next argues on appeal that the circuit court failed to consider or failed to explain

how it considered the equitable distribution factors set forth in Code § 20-107.3(E).[9]  Husband

argues that the circuit court's decision to award a higher percentage of the marital assets to wife[10]

and to apportion a higher percentage of the marital debt to husband was not supported by the Code

§ 20-107.3(E) factors.

---

marital property, or separate or marital debt, which is not jointly owned or owed.  The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof.

See also Broom v. Broom, 15 Va. App. 497, 505, 425 S.E.2d 90, 94 (1992) (holding that an IRA is not a pension, profit-sharing or deferred compensation within the meaning of Code § 20-107.3(G)(1)").  While Code § 20-107.3(D) also gives circuit courts "the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party," the provisions of Code § 20-107.3(C) apply to the circuit court's decision to order a transfer of husband's IRA.

[9] This argument pertains to husband's fourth assignment of error concerning the division of marital assets and portions of his fifth, sixth, and eighth assignments of error addressing the allocation of marital debt.

[10] On brief, husband argues that the circuit court awarded either 75% or 99.84% of the marital assets to wife.  Husband explains on brief that the higher 99.84% figure does not take into account the marital assets the circuit court found that he wasted and used for non-marital purposes following the separation of the parties.  Husband acknowledges that both calculations are "exclusive of deferred compensation and retirement benefits."  Husband was awarded one-half of the marital share of those retirement assets.

Husband acknowledges, as he must, that the circuit court expressly stated in its December 11, 2013 letter opinion that it considered all of the Code § 20-107.3 factors. Relying on this Court's decision in Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992), husband argues that there must be "more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed." However, the circuit court in this case did more than simply state that all of the statutory factors had been considered. It then made findings from the evidence that related to several statutory factors – both in its December 11, 2013 letter opinion and from the bench during the February 18, 2014 hearing addressing husband's motion for reconsideration.

Specifically, the circuit court found in the letter opinion, "Husband made the majority of the positive monetary contributions, but these are negated by the installment debt of more than $35,000. Husband committed waste of marital property after separation. Husband's misconduct led directly to the dissolution of the marriage." These findings touch on such factors as the "contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties," Code § 20-107.3(E)(2); the circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivisions (1), (3) or (6) of § 20-91 or § 20-95," Code § 20-107.3(E)(5); the "debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities," Code § 20-107.3(E)(7); and the "use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties," Code § 20-107.3(E)(10).

In its February 18, 2014 bench ruling, the circuit court again emphasized husband's waste of marital assets. The circuit court also noted that husband had loaned a friend $10,000 – even

- 10 -

though the parties had substantial debt – which constituted a loan of an especially suspicious nature, given the circuit court's findings that husband took from wife a diamond ring valued at $1,795 and also took gold valued at $9,000. See Code § 20-107.3(E)(11) (stating that the circuit court may consider "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award").

Case law is clear that, although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its findings are "based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988); see also, e.g., Judd v. Judd, 53 Va. App. 578, 592-93, 673 S.E.2d 913, 919 (2009). "Virginia law does not establish a presumption of equal distribution of marital assets. It is within the discretion of the court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3(E) require." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998). "A circuit court, therefore, need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines." Robbins v. Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006). Viewing the record in the light most favorable to wife, as we must since she was the prevailing party below, the circuit court's consideration of the Code § 20-107.3(E) factors and the evidence in this case satisfied these principles of equitable distribution.

Husband contends that the circuit court assigned excessive or arbitrary weight to husband's misconduct – his cruelty toward wife – since husband claims that his misconduct did not affect the identity or value of the marital property. However, this Court has held:

> [A]lthough circumstances "that lead to the dissolution of the marriage but have no effect upon marital property [or] its value . . . *need* not be considered" under Code § 20-107.3(E)(5), Aster v. Gross, 7 Va. App. 1, 5-6, 371 S.E. 2d 833, 836 (1986) (emphasis

- 11 -

added), a trial court does not automatically abuse its discretion if it takes those factors into account. As we explained in O'Loughlin v. O'Loughlin, 20 Va. App. 522, 458 S.E. 2d 323 (1995), factors and circumstances leading to the dissolution of the marriage *may* be considered during equitable distribution – even if those factors have no financial impact on the marriage – as long as those factors detracted from the overall "marital partnership." Id. at 528, 458 S.E. 2d at 326 (holding that long-term infidelity and abusive behavior could be considered, in the court's discretion, "under any of the factors of Code § 20-107.3"); see also Budnick v. Budnick, 42 Va. App. 823, 595 S.E. 2d 50 (2004) (trial court did not err in considering criminal business activities under Code § 20-107.3(E)(1)); Watts v. Watts, 40 Va. App. 685, 581 S.E.2d 224 (2003) (trial court did not err in considering husband's adultery under Code § 20-107.3(E)(1) and former § 20-107.3(E)(10)).

Ranney v. Ranney, 45 Va. App. 17, 46-47, 608 S.E.2d 485, 499 (2005). Here, the circuit court clearly found that husband's cruelty to wife caused the dissolution of the marriage and obviously detracted from the overall marital partnership. Id. Thus, the circuit court here could, in a valid exercise of its discretion, consider husband's cruelty and assign it appropriate weight among the totality of the circumstances.

Therefore, we conclude that the circuit court adequately explained how it considered and applied the equitable distribution factors set forth in Code § 20-107.3(E), and we affirm the circuit court's decision in doing so.

### Apportionment of Marital Credit Card Debt

The record indicates that there was $36,606 in marital credit card debt. Husband was apportioned $33,106 of this debt, whereas wife was apportioned $3,500. In portions of his sixth and eighth assignments of error, husband argues that the circuit court held husband responsible for a greater portion of the marital credit card debt than wife had even claimed in the circuit court. Husband notes that, prior to the November 25, 2013 evidentiary hearing, wife submitted a "Proposed Scheme of Equitable Distribution" in which wife indicated that husband should receive an approximately $9,900 credit toward apportionment of credit card debt.

In addition, husband notes that wife's counsel made the following statement during closing argument at the November 25, 2013 evidentiary hearing:

> The debts [our] distribution laid out very clearly, Your Honor. I think it's *very fair we gave him credit* for the debt that he did pay down. And acknowledge that according to our distribution *he should receive a credit* of approximately $9,000 towards her total award.

(Emphasis added). However, the circuit court declined to give husband this approximately $9,000 credit, as its letter opinion and final decree show.

During oral argument before this Court, wife's counsel acknowledged that, by not giving this credit to husband, the circuit court entered a larger award for wife than even wife had sought at the close of the evidentiary hearing. Nevertheless, wife contended that the generalized request for relief in her divorce complaint enabled the circuit court to deny the approximately $9,000 credit to husband. In the divorce complaint, wife requested "all rights and remedies afforded by Section 20-107.3 of the Virginia Code" and "such other and further relief as the nature of this case may require."[11] However, wife's closing argument during the November 25, 2013 evidentiary hearing placed a specific *limitation* on the generalized relief she had sought – at least with respect to the apportionment of marital debt. See Johnson v. Buzzard Island Shooting Club, Inc., 232 Va. 32, 36, 348 S.E.2d 220, 222 (1986) ("The only limitation placed on a grant of general relief is that it not be inconsistent with the . . . relief specifically sought.").

The Supreme Court's decision in Carter v. Lambert, 246 Va. 309, 435 S.E.2d 403 (1993), is instructive. In Carter, the plaintiff initially sued the defendants for $58,500. However, at trial,

---

[11] On appeal, wife also argues that her "Proposed Scheme of Equitable Distribution" (proposed scheme) was not a pleading that should be considered binding on her. She contends that the proposed scheme was only offered as a tool to assist the circuit court's consideration of equitable distribution. We do *not* hold in this case in any way that wife was bound by her proposed scheme of equitable distribution – which was submitted before the November 25, 2013 evidentiary hearing and, therefore, before any evidence was taken by the circuit court.

the plaintiff requested that the trial court reduce the amount the defendants were being sued for to $45,000. Id. at 313, 435 S.E.2d at 405. The jury returned a verdict finding the defendants liable and awarding the plaintiff $58,500 – the amount initially requested in the plaintiff's pleadings. Id. While the jury's finding of the defendants' liability was upheld on appeal, the Supreme Court reversed the jury's decision to award the plaintiff $58,500. The Supreme Court explained, "Because the jury's verdict was greater than the amount sued for, we will enter judgment for Carter in the amount of the relief he requested." Id. at 315, 435 S.E.2d at 406.

Similarly, by asserting during closing argument of the November 25, 2013 evidentiary hearing that it would be *fair* to credit husband an approximately $9,000 credit toward his share of the marital debt and that husband *should* be awarded this credit, wife placed a specific limitation on the generalized relief that she had sought in her divorce complaint. See Johnson, 232 Va. at 36, 348 S.E.2d at 222; see also Brown v. Brown, 5 Va. App. 238, 245, 361 S.E.2d 364, 368 (1987) (holding that the wife's counsel's statement to the trial court that the wife was "not seeking spousal support" and the wife's reiteration of that position from the witness stand constituted a waiver of the wife's right to any spousal support).[12] Therefore, the circuit court erred when it declined to award husband this credit that had essentially been agreed upon by the parties. Accordingly, we reverse the circuit court's apportionment of the marital credit card debt on this basis and remand the matter to the circuit court for reconsideration of the marital debt.

---

[12] This Court's decision in Rosedale v. Rosedale, No. 2414-07-4, 2008 Va. App. LEXIS 341 (Va. Ct. App. July 22, 2008), although it is unpublished, is also instructive. In Rosedale, the wife made a generalized request for equitable distribution in her divorce pleadings. She then sought fifty percent of a certain marital asset at the evidentiary hearing, yet the circuit court awarded her a greater percentage of that asset. On appeal, this Court held that the wife "effectively limited the scope of her request for relief and, thus, waived her right to any more" than half of that marital asset. Id. at *11.

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998). A circuit court's decision regarding spousal support "will not be disturbed on appeal unless there has been a clear abuse of discretion." Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992). A court "'by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

In his tenth assignment of error, husband argues that the circuit court committed an error of law in the June 9, 2014 final decree when it overruled husband's motion to address spousal support because "Plaintiff's [i.e, wife's] pleadings never requested spousal support." On brief, the parties both rely on language from Code § 20-79(b), which states:

> In any suit for divorce, the court in which the suit is instituted or pending, when either party to the proceedings so requests, shall provide in its decree for the maintenance, support, care or custody of the child or children in accordance with Chapter 6.1 (§ 20-124.1 et seq.), support and maintenance for the spouse, if the same be sought, and counsel fees and other costs, if in the judgment of the court any or all of the foregoing should be so decreed.

Husband focuses on the words "either party" – i.e., *either* party in the suit for divorce may request for the decree to include a provision addressing, *inter alia*, spousal support. Wife focuses on the words "the spouse" – which, according to wife, indicates that only a request from the spouse *seeking* spousal support triggers the circuit court's duty to address spousal support in the final decree.

The Supreme Court's decision in Werner v. Commonwealth, 212 Va. 623, 186 S.E.2d 76 (1972), controls our analysis of this assignment of error. In Werner, the Supreme Court held:

> [A] support order of a juvenile and domestic relations court continues in full force and effect notwithstanding the entry by a court of record of a divorce decree that is silent as to support. *Either Werner or his wife* could have asked the Circuit Court to make specific provision in the final divorce decree *for allowance or denial* of alimony. If such a provision had been included in the decree, the jurisdiction of the Juvenile and Domestic Relations Court would have ceased under § 20-79(a). But neither party sought to have such provision made.

Id. at 625, 186 S.E.2d at 78 (emphasis added). Therefore, the Supreme Court held in Werner that *either* spouse could have petitioned the circuit court for a provision in the final decree awarding *or* denying spousal support (or, as it was called at that time, alimony). Id.

Furthermore, we observe that the Supreme Court in Werner interpreted a version of Code § 20-79(b) that was very similar to the current version of that statute.[13] Pertinent to this appeal, the legislature since the decision in Werner has replaced the word "alimony" in Code § 20-79(b) with the phrase "support and maintenance for the spouse."[14] Following that change to Code § 20-79(b), however, this Court has already explained that the Supreme Court's holding in Werner also applies in the context of spousal support:

> As the Court instructed in Werner, either party, by proper pleading, "could have asked the Circuit Court to make specific provision in the final divorce decree for allowance or denial of [spousal support]. If such a provision had been included in the decree, the jurisdiction of the [district court] would have ceased under § 20-79(a)." Werner, 212 Va. at 625, 186 S.E.2d at 78; see also Code § 16.1-244(A). However, because "neither party sought to

---

[13] At the time of the decision in Werner, Code § 20-79(b) provided:

> In any suit for divorce the court in which same is instituted or pending, when either party to the proceedings so requests, shall provide in its decree for the maintenance, support, care or custody of the child or children, alimony if the same be sought, and counsel fees and other costs, if in the judgment of the court any or all of the foregoing should be so decreed.

[14] Alimony, by definition, is an award directed to the wife. See Eaton v. Davis, 176 Va. 330, 338, 10 S.E.2d 893, 897 (1940). Either spouse can request and receive spousal support.

- 16 -

> have such provision made," the preexisting support order "continued in full force and effect." Werner, 212 Va. at 625, 186 S.E.2d at 78.

Reid v. Reid, 24 Va. App. 146, 151, 480 S.E.2d 771, 773 (1997) (alterations in Reid).

Therefore, it is clear that Werner applies to the analysis here. Under the Supreme Court's decision in Werner (and this Court's decision in Reid), *either party* can request the circuit court for a provision in a final divorce decree *awarding or denying* spousal support. A party seeking spousal support, of course, would not seek an order denying spousal support. Thus, Werner permits one party to request a provision in the final decree denying an award of spousal support to the other party (as in Werner) or limiting the other party's spousal support award to a defined duration (as here).

Consequently, we agree with husband that it was error for the circuit court to base its decision on spousal support solely on the fact that wife did not request spousal support in her circuit court divorce pleadings. We remand the matter to the circuit court for reconsideration of this issue.[15]

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision on the assessment of the Code § 20-107.3(E) equitable distribution factors. We reverse the circuit court's decision to transfer title of husband's IRA to wife, the circuit court's apportionment of marital credit card debt to husband without giving husband a credit for the approximately $9,000 that wife's counsel

---

[15] Moreover, we observe that husband raised the issue of spousal support in a pleading in the divorce case – when he filed his "Motion to Decree Spousal Support" on May 19, 2014. While wife argues on appeal that husband's motion came too late in the proceedings, the circuit court stated at the February 18, 2014 hearing that husband had raised a "valid objection" concerning spousal support and ruled that the matter "should be set back on the docket for determination of spousal support to be included in the final decree." The record on appeal indicates that the circuit court ultimately declined to include a spousal support provision in the June 9, 2014 final decree because wife never requested spousal support in the divorce case – not because husband requested addressing the issue of spousal support too late in the proceedings.

stated was appropriate during closing arguments at the November 25, 2013 evidentiary hearing, and the circuit court's ruling that it would not consider the issue of spousal support despite husband's request that the circuit court do so.  We remand the matter for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part
and remanded.
