PRESENT: Hassell, C.J., Keenan, Kinser, Lemons, Agee, and
         Goodwyn, JJ., and Stephenson, S.J.

JANET LIN BROWN, ADMINISTRATOR OF THE ESTATE OF
CLIFFORD LEWIS FANUCCI, SR., DECEASED
                                        OPINION BY
v. Record No. 070304    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        February 29, 2008
DANIEL MARK HOFFMAN, M.D.

        FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                    J. Richard Alderman, Judge

    The sole issue in this appeal is whether the trial court

erred in striking the plaintiff's evidence and entering summary

judgment for the defendant.

                                I

    Janet Lin Brown, Administrator of the Estate of Clifford

Lewis Fanucci, Sr., Deceased (the Plaintiff), filed in the

Circuit Court of the City of Fredericksburg a medical

malpractice suit against Daniel Mark Hoffman, M.D., and others.[*]

The case was tried by a jury, and, at the conclusion of a three-

day trial during which both sides presented evidence, the trial

court struck the Plaintiff's evidence and entered summary

judgment for Dr. Hoffman.  We awarded the Plaintiff this appeal.

                                II

    When a trial court strikes a plaintiff's evidence, we view

the evidence in the light most favorable to the plaintiff,

"giving [the plaintiff] the benefit of all inferences which a

jury might fairly draw from the evidence."  If several inferences may be drawn from the evidence, though they may differ in degree and probability, we adopt those most favorable to the plaintiff "unless they are strained and forced or contrary to reason."  West v. Critzer, 238 Va. 356, 357, 383 S.E.2d 726, 727 (1989); accord Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000).  The evidence, viewed in the light most favorable to the Plaintiff, is as follows.

In early August 2002, Fanucci saw Dr. Hoffman, a urologist, complaining of, among other things, difficult urination and blood in his urine.  Dr. Hoffman diagnosed Fanucci as having a cancerous growth on his left kidney.  On August 13, 2002, Dr. Hoffman performed surgery to remove Fanucci's left kidney.  Dr. Hoffman was assisted by his partner, Dr. Elmore J. Becker, Jr.

Dr. Hoffman elected to use a surgical technique known as a hand-assisted laparoscopic nephrectomy.  In utilizing this technique, a surgeon operates primarily laparoscopically; however, the surgeon, in addition to the small incision made to insert the laparoscopic instruments, makes an additional incision through which to insert his hand to assist in the removal of the kidney.

---

[*] The other defendants were either nonsuited or otherwise dismissed prior to trial.

2

In order to remove the left kidney, it is medically necessary to first clamp the left renal vein and artery. Dr. Hoffman found the left renal vein, which is normally in front of the left renal artery, and clamped it. Dr. Hoffman then felt what he thought was the left renal artery and clamped it. As Dr. Hoffman began to dissect the left kidney from the surrounding tissue, he noticed what he believed to be a second renal artery leading to the left kidney. Dr. Hoffman was not concerned by this discovery because, according to him, "20 or 30 percent of people will have two renal arteries" supplying the same kidney. Dr. Hoffman clamped this second artery and continued to dissect the left kidney.

After freeing the kidney, Dr. Hoffman noticed that the first artery he had clamped, but had not yet cut, was "going in the wrong direction" and was, in fact, the right renal artery. Dr. Hoffman then removed the clamp in order to restore the blood flow to the right kidney. When he did so, Fanucci began bleeding from a tear in the right renal artery. Dr. Hoffman was unable to stop the bleeding, so he called in Dr. Richard C. Earnhardt, a vascular surgeon who was on duty at the hospital.

Dr. Earnhardt tried to repair the tear in the right renal artery, but he was unsuccessful. Fanucci's significant blood loss from the right renal artery tear forced Dr. Earnhardt to perform a bypass procedure on the damaged artery. Dr. Earnhardt

3

also noticed blood oozing from tears in Fanucci's spleen near where the left kidney had been located, and he removed the spleen.  As a result of the prolonged surgery, Fanucci suffered from a number of complications, and he ultimately died.

Dr. John C. Hulbert, a practicing urologist and the Plaintiff's expert on the standard of care, testified that Dr. Hoffman's actions relating to the right renal artery were a deviation from the standard of care.  He opined that damaging the right renal artery while operating on the left kidney indicated that Dr. Hoffman had lost his anatomical bearings during surgery.  Nothing in the records that Dr. Hulbert reviewed indicated that the right renal artery was not in the normal location or that anything was distorting Fanucci's anatomy.  On cross-examination, Dr. Hulbert stated that he did not know if Fanucci had any anatomical abnormalities.  He agreed, however, that, if the right renal artery were located behind the left renal vein, then "that might be an understandable complication."

Dr. Earnhardt testified that, at the time he was repairing the right renal artery, "there were no anatomic anomalies" with regard to the artery.  Dr. Earnhardt admitted, however, that Fanucci's anatomy "had changed significantly" from when Dr. Hoffman first started the surgery.

Dr. Jose Abrenio, the pathologist who performed an autopsy on Fanucci, testified that the right renal artery was no longer normal because of the bypass surgery.  Dr. Abrenio also testified that there was nothing unusual about the right renal artery and that it was located in the proper place anatomically.

Dr. Hoffman testified that the right renal artery "is not anywhere near the left renal vein in normal anatomy."  According to Dr. Hoffman, however, in Fanucci's anatomy, the right renal artery was located "where the left renal artery should have been."

Dr. Becker, Dr. Hoffman's partner who assisted in the surgery, testified that he thought the right renal artery was the left renal artery based on its location and because it appeared to be going into the left kidney.  Dr. Becker also testified that there was nothing abnormal about the procedures performed by Dr. Hoffman.

### III

The critical issue at trial was whether Fanucci's anatomy presented an anomalous situation in that his right renal artery was located where a reasonable urologist would anticipate that his left renal artery would be.  If that were the case, then the Plaintiff's expert agreed that Dr. Hoffman did not violate the standard of care.

5

Although the two physicians who had performed the nephrectomy testified that such an anomaly existed, the testimony of Dr. Earnhardt and of Dr. Abrenio was otherwise. Dr. Earnhardt testified that, when he intervened in Fanucci's surgery, he found no anatomical anomalies. Likewise, Dr. Abrenio testified that the right renal artery appeared in the normal location at the autopsy. The weight to be given to the testimony of Dr. Earnhardt and Dr. Abrenio and the doctors' credibility were matters within the province of the jury. See Burroughs v. Keffer, 272 Va. 162, 167, 630 S.E.2d 297, 300 (2006).

When this evidence is viewed in the light most favorable to the Plaintiff, giving her the benefit of all inferences that a jury might fairly draw from the evidence, we conclude that reasonable minds could differ whether an anomalous anatomical situation existed. Therefore, the issue should have been decided by the jury, and the trial court erred in striking the Plaintiff's evidence and entering summary judgment for Dr. Hoffman.

Accordingly, we will reverse the trial court's judgment and remand the case to the trial court for a new trial.

Reversed and remanded.