COURT OF APPEALS OF VIRGINIA

Present:  Judges Ortiz, Frucci and Bernhard
Argued at Fairfax, Virginia

UNPUBLISHED

PAUL J. HAIRE, DERIVATIVELY ON BEHALF
  OF ALEXANDRIA CAPITAL ASSETS, LLC

v.      Record No. 0149-24-4

MATT KASAP, ET AL.

PAUL J. HAIRE

v.      Record No. 0150-24-4

MATT KASAP, ET AL.                          MEMORANDUM OPINION* BY
                                              JUDGE DAVID BERNHARD
PAUL J. HAIRE                                     JULY 15, 2025

v.      Record No. 0151-24-4

MATT KASAP, ET AL.

MATT KASAP

v.      Record No. 0165-24-4

PAUL HAIRE, DERIVATIVELY ON BEHALF
  OF ALEXANDRIA CAPITAL ASSETS, LLC


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

Peter Anthony Jabaly (Kevin S. Jaros; William Z. Nakhleh; Jabaly Law;
PJI Law, PLC; Nakhleh Rothfeld, LLP, on briefs), for Paul J. Haire,
derivatively on behalf of Alexandria Capital Assets, LLC, and Paul J.
Haire.

Michael W. Robinson (Carly M. Celestino; Venable LLP, on briefs), for
Matt Kasap and Alexandria Capital Assets, LLC, in Record No.
0151-24-4.

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

This appeal involves three consolidated cases concerning Paul Haire, Matt Kasap, and Alexandria Capital Assets, LLC ("ACA"). Kasap raises two assignments of error. First, Kasap argues the trial court erred by denying his motion to strike the fraud claim against him because the evidence presented did not establish the essential elements of fraud. Specifically, Kasap claims there was no evidence ACA relied on any purported misrepresentation, no evidence of an actionable misrepresentation, nor any evidence of damages. Second, Kasap argues the trial court erred in not setting aside the fraud verdict and entering judgment in his favor. Kasap asserts the verdict cannot be reconciled with the fraud claim as pleaded or with the jury verdicts on the other claims involving the additional rent payments. Lastly, Kasap argues that the trial court erred in invoking remittitur instead of entering judgment in his favor, as the verdict was based on conduct not alleged as the basis for liability.

Haire in turn claims the trial court erred by: (1) granting Kasap's motion to set aside the jury verdict on the fraud claim, entering an order of remittitur, and then reducing the damages to $0; (2) granting Kasap's motion to strike Haire's Count II claims under Code § 13.1-1024.1 based on the statute of limitations; (3) granting Kasap's post-trial motion to set aside the jury verdict on the breach of fiduciary duty claim and limiting Don Coker's testimony; (4) denying Haire's post-trial motion for reconsideration of the court's granting Kasap's motion to strike Haire's claim for punitive damages; (5) excluding Jeremiah Grant's testimony; (6) denying Haire's motion for an award of expenses and attorney fees; (7) dismissing Haire's claim for dissociation of Kasap; (8) relying on two jury interrogatories in determining whether there was a contract for a right of first refusal; (9) sustaining Kasap and ACA's demurrer with prejudice regarding Haire's declaratory judgment claim in the original complaint; and (10) denying Haire's motion for default judgment and granting Kasap and ACA's motion to file a late responsive pleading.

With respect to Kasap's assignments of error and Haire's first assignment of error, the trial court's decision to reduce the fraud claim damages to $24,000 is sufficiently supported by the record. However, as it was not the trier of fact, the court exceeded its authority by making a witness credibility determination in concluding that those damages had been satisfied pretrial. Regarding Haire's second assignment of error, the trial court properly granted the motion to strike based on the statute of limitations, as the continuing services doctrine does not toll the limitations period. The trial court also did not err in setting aside the jury verdict on the breach of fiduciary duty claim, as Haire presented only speculative evidence of damages. Similarly, the court properly foreclosed punitive damages, having found no malice on Kasap's part. Exclusion of Grant's testimony was likewise proper, as the transactions he intended to identify were already admitted into evidence, and his testimony relied on Coker's speculative statements. The denial of Haire's motion for expenses and attorney fees was a reasonable exercise of the court's discretion under the circumstances. As for the dissociation claim, the trial court did not err in striking it because the record supports the court's finding of insufficient evidence to justify dissociation. Additionally, Haire's eighth, ninth, and tenth assignments of error were waived.

Consequently, this Court reverses the trial court's remittitur of the fraud claim damages against Kasap to $0 and directs the trial court enter an order awarding Haire $24,000 in damages against Kasap. The remaining rulings of the trial court are affirmed.

BACKGROUND

Kasap created ACA, a real estate holding company. Kasap is a 60% owner of ACA, whereas Haire is a 40% owner. ACA owns three commercial buildings, commonly referred to as the Mt. Vernon Avenue, Richmond Highway, and Duke Street properties. Your Dog's Best Friends, Inc. ("YDBF"), a business created by both Haire and Kasap but now owned solely by Haire, occupied the Mt. Vernon Avenue and Richmond Highway properties.

By 2018, ACA held $3.35 million in mortgage debt. That year, Kasap and his wife loaned ACA $3.45 million (the "Kasap Loan") to refinance these debts, and, at Haire's request, inject working capital into the business.

Haire announced in 2020 that he wanted to part ways with Kasap and buy the Richmond Highway and Mt. Vernon Avenue properties.[1] Kasap testified that Haire asked for a right of first refusal on the two buildings and that this was the first time Haire had raised such a request. Haire, however, claimed Kasap gave Haire a right of first refusal prior to or when Haire joined ACA. Kasap denied doing so. Later that year, when the relationship between Haire and Kasap had deteriorated further, Kasap emailed Haire, stating Haire would have a right of first refusal for the two properties.

During the summer of 2021, Haire requested that ACA refinance its loan from Kasap "with a lender who [would] give ACA more favorable terms." Haire testified that he took steps to obtain financing, including discussing possible financing with Jen Ferrara at John Marshall Bank ("JMB"). According to his own testimony, however, Haire ultimately did not discuss refinancing ACA with Ferrara, never submitted a loan application to JMB, and did not provide any financial information to JMB to support a loan application. According to Kasap's testimony, in early August of 2021, Haire suggested that ACA lease the three ACA properties to Haire for 20 years so that ACA could use the income stream to refinance the loan. That plan never came to fruition.

In late August 2021, Haire arranged for a meeting with Kasap and JMB to discuss a possible loan. Kasap cancelled the meeting. Kasap alleged he cancelled because Haire had invited Ferrara, another bank employee in charge of mortgages, and a YDBF employee to the meeting and had announced that the purpose of the meeting was to draft a lease, which was not Kasap's intention in

---

[1] Haire and Kasap never came to an agreement regarding dissociation, and as of this litigation, their business relationship remains in place.

meeting with Haire. Haire accused Kasap of harming ACA by refusing to refinance the loan, as the interest rate on the Kasap Loan was 6.5%, which was not competitive with prevailing rates at the time.

Kasap and ACA filed their operative complaint against Haire and YDBF in February of 2022, alleging breach of contract and breach of fiduciary duty and seeking declaratory judgment and dissociation of Haire. None of those claims are at issue here. Haire counterclaimed, seeking an order dissociating Kasap from ACA. Based on a provision of the Operating Agreement limiting options for the involuntary removal of a member, the trial court found judicial dissociation unavailable and struck Haire's counterclaim.

Haire then filed his second lawsuit, against Kasap and ACA, alleging Kasap and ACA breached a contract to offer Haire the right of first refusal regarding ACA's properties. Haire also requested declaratory judgment as to the right of first refusal. The trial court sustained Kasap's demurrer to the original complaint's declaratory judgment count with leave to amend. In the same case, the trial court denied Haire's motion for default judgment and granted Kasap and ACA leave to file a late answer. With respect to Haire's claim of specific performance, the court found that the statute of frauds did not bar the claim and thus denied the plea in bar raising the statute of frauds issue. Additionally, the trial court entered a final judgment in favor of Kasap on the breach of contract claim, based on the jury's findings that Haire failed to meet his burden and that Kasap did not breach the contract.

Finally, after receiving discovery in his other two suits and reviewing ACA's financial records, Haire filed a derivative action on behalf of ACA against Kasap. Haire alleged, in relevant part, that Kasap took unauthorized distributions from ACA, breached his fiduciary duty by failing to refinance his loan to ACA, and committed fraud. According to Haire, Kasap committed fraud by taking certain additional cash rental payments from a tenant, Jad Ibrahim, an occupant of the Duke

- 5 -

Street property. Specifically, Haire alleged Kasap had admitted during a deposition that he had received about $400 per month for a period of five years. According to the complaint, the payments were in exchange for Kasap's agreement to not raise Ibrahim's rent by $1,000. As a result of the alleged loss of $1,000 per month, Haire alleged ACA suffered $60,000 in damages. Kasap testified that he disclosed these payments to his lawyers and repaid ACA $26,000 in November 2022. The check Kasap submitted into evidence to support his defense read "reimb." in the memo section.

The trial court dismissed Haire's claim for breach of fiduciary duty, finding it was barred by the statute of limitations. In addition, the trial court granted Kasap's motion to limit the testimony of Haire's banking expert, Don Coker, and later excluded the testimony of Haire's second expert, Jeremiah Grant. A jury found in Haire's favor on the fraud and breach of fiduciary duty claims. The jury awarded Haire $422,500 for fraud and $552,000 for breach of fiduciary duty. The trial court granted Kasap's motion to set aside the jury verdict on the breach of fiduciary duty claim and entered judgment in Kasap's favor. The court granted in part and denied in part Kasap's motion to set aside the jury verdict on the fraud claim and remitted the damages to $24,000. The trial court then found that the $24,000 had been paid back to ACA prior to trial and reduced the damages to $0. Finally, the trial court denied Haire's motion to reconsider the ruling denying his request for punitive damages and motion for expenses and attorney fees.

ANALYSIS

I. Kasap's Assignments of Error

Kasap assigns error to the trial court's failure to strike Haire's evidence on the fraud claim and for failing to dismiss the claim altogether instead of remitting damages to $0. This Court agrees in part. Kasap conceded he pocketed cash payments received from Jad Ibrahim of $400 per month for four to five years for the expansion of Ibrahim's lease to include the Duke Street garage. Haire's theory of the case was that "the payments from Ibrahim to Kasap were a *quid*

*pro quo* exchange for Ibrahim's use of the commercial garage at Duke St."  Haire further alleged the payments were "in exchange for a monthly rent abatement in an amount which, upon information and belief, was at least $1,000 per month."  Although the trial court properly denied Kasap's motion to strike and correctly applied remittitur to reduce the damages to $24,000, it erred by making a credibility determination—based solely on Kasap's testimony—that he had reimbursed ACA.

> A.  *The trial court did not err in denying Kasap's motion to strike.*

In evaluating whether to grant Kasap's motion to strike Haire's fraud claim, the trial court was required

> to accept as true all the evidence favorable to [Haire] as well as any reasonable inference a jury might draw therefrom which would sustain the plaintiff's cause of action.  The trial court [was] not to judge the weight and credibility of the evidence, and [could] not reject any inference from the evidence favorable to [Haire] unless it would defy logic and common sense.

*Austin v. Shoney's, Inc.*, 254 Va. 134, 138 (1997).  In reviewing the trial "court's decision granting a motion to strike the plaintiff's evidence, we likewise review the evidence in the light most favorable to the plaintiff."  *Gelber v. Glock*, 293 Va. 497, 515 (2017).

"[A]ny doubt about the sufficiency of the evidence 'should be resolved against the party making the motion, and the issue submitted to the jury.'"  *Higgins v. Bowdoin*, 238 Va. 134, 141 (1989) (quoting *Walton v. Walton*, 168 Va. 418, 423 (1937)).  "When there is a conflict of evidence concerning . . . [whether an] issue . . . existed is a question reserved for the jury's determination."  *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 110 (2021).  When "reasonable minds could differ" about the appropriate resolution, the trial court is required to "den[y] the motion to strike."  *See Bentley v. Felts*, 248 Va. 117, 119-20 (1994).  "[I]f the evidence leaves the question [of liability] in doubt[,] it becomes an issue to be determined by the jury."  *H.C. v. Potomac Hosp. Corp. of Prince William*, 81 Va. App. 1, 16 (2024) (second and third alterations in

- 7 -

original) (quoting *Plummer v. Ctr. Psychiatrists*, 252 Va. 233, 235 (1996)).  Haire asserts, and

Kasap admitted, he concealed rental income he received from Ibrahim owed to the business.

> If a party conceals a fact that is material to the transaction,
> knowing that the other party is acting on the assumption that no
> such fact exists, the concealment is as much a fraud as if the
> existence of the fact were expressly denied, or the reverse of it
> expressly stated.

*Clay v. Butler*, 132 Va. 464, 474 (1922).  "The burden of proof applicable to fraud, [is by] clear

and convincing evidence."  *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 381-82

(2018).  Kasap's admission that he kept rents that did not belong to him sufficiently raised an

issue to be determined by the trier of fact whether he committed fraud by concealment.  Thus,

the trial court did not err in denying Kasap's motion to strike.

    *B.  The trial court erred in making a credibility judgment respecting Kasap's testimony that the damages found had been previously satisfied.*

In this case, the verdict reflects that the jury was confused about its responsibilities

regarding the assessment of damages.  Haire's 2023 derivative suit against Kasap alleged, in

relevant part, that Kasap committed fraud by pocketing cash rent from Jad Ibrahim.  Kasap

testified that he disclosed these payments to his lawyers and paid ACA $26,000[2] in November

2022, before trial commenced.

> [T]he trial court's authority to set aside a jury verdict "can only be
> exercised where the verdict is plainly wrong or without credible
> evidence to support it.  If there is a conflict in the testimony on a
> material point, or if reasonable [persons] may differ in their
> conclusions of fact to be drawn from the evidence, or if the
> conclusion is dependent on the weight to be given the testimony,
> the trial judge cannot substitute his conclusion for that of the jury
> merely because he would have voted for a different verdict if he
> had been on the jury."

---

[2] It is not fully clear from the record why the payment was for $26,000 as opposed to
$24,000.

*Henderson v. Gay*, 245 Va. 478, 480-81 (1993) (second alteration in original) (quoting *Lane v. Scott*, 220 Va. 578, 581 (1979), *cert. denied*, 446 U.S. 986 (1980)). Here, the evidence adduced does not support the finding that the actual damages were $422,500 when, at most, Haire was claiming $60,000. Therefore, the verdict was "plainly wrong" and "without credible evidence to support it." *Id.* at 480.

"When a jury returns an excessive damages verdict, a circuit court may order a remittitur or a new trial." *City-To-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 348 (2023). The trial "court's decision to accept or reject a jury's award of damages is reviewed by the appellate court for abuse of discretion." *Id.* "[The] record must show the grounds relied on in support of such action, otherwise it cannot be upheld." *Campbell v. Hankins*, 217 Va. 800, 803 (1977) (alteration in original) (quoting *Hoffman v. Shartle*, 113 Va. 262, 264 (1912)). Remittitur is appropriate when the trial court finds that the damages awarded by the jury are excessive. *Smithey v. Sinclair Ref. Co.*, 203 Va. 142, 146 (1961). The trial court has the power to set aside the verdict and order a new trial or to require the plaintiff to accept a reduced award under protest, which can then be appealed. *Campbell*, 217 Va. at 801-02. To properly support remittitur, first, the trial record must contain "an explanation demonstrating that the [trial] court, in reaching its conclusion, considered 'factors in evidence relevant to a reasoned evaluation of the damages.'" *Shepard v. Capitol Foundry of Va.*, 262 Va. 715, 721 (2001) (quoting *Poulston v. Rock*, 251 Va. 254, 259 (1996)). "Second . . . the amount of recovery after remittitur [must] bear[] a 'reasonable relation to the damages disclosed by the evidence.'" *Id.* (quoting *Poulston*, 251 Va. at 259).

In this case, the jury found in Haire's favor on the fraud claim and awarded ACA $422,500. The trial court denied Kasap's motion to set aside the jury verdict on the fraud claim

but determined that the damages awarded were excessive and remitted them to $24,000.[3]  The trial court then found Kasap repaid the $24,000 to ACA prior to trial and reduced the damages to $0.  In making that determination, the trial court necessarily made a credibility judgment that it believed Kasap when he testified the check in evidence was for repayment of the cash rent he retained and therefore, those were the total damages recoverable under Haire's fraud claim.

"[A] trial judge may not arbitrarily substitute his [or her] opinion for that of the jury." *Robinson v. Old Dominion Freight Line, Inc.*, 236 Va. 125, 129 (1988).  "The credibility of witnesses and the weight to be given their testimony are matters peculiarly within the province of the jury. . . .  [T]rial courts should not [in jury trials] undertake to determine the truth or falsity of testimony or to measure its weight."  *Williams v. Vaughan*, 214 Va. 307, 310 (1973).  "It is for the trier of fact, upon proper instructions, to decide whether the clear and convincing burden of proof is met, that is, whether the evidence presented produces in the trier-of-fact's mind 'a firm belief or conviction as to the allegations sought to be established.'"  *Higgins*, 238 Va. at 142 (quoting *Walker Agency & Aetna Cas. Co. v. Lucas*, 215 Va. 535, 540-41 (1975)).  Thus, the trial court overstepped its authority when it made a credibility judgment respecting the fact in controversy whether the amounts Kasap paid back were truly for the damages claimed by Haire for fraud and in total.  The trial judge was not sitting as trier of fact and could not supplant the jury in making credibility judgments.  Accordingly, while the record supports the trial court's remittitur of damages, its ruling that Kasap satisfied those damages pretrial must be reversed.  The case must thus be remanded with instructions to enter final judgment for Haire and against Kasap in the amount of $24,000.

---

[3] Haire contended that Kasap kept the $24,000 for himself instead of pursuing $60,000 in rent that ACA could have collected.  The trial court's ruling reflects its conclusion that Haire's claim regarding the foregone $60,000 in rent was speculative and that the proper measure of fraud damages was limited to the actual amount Kasap retained.

II.  Haire's Assignments of Error

A.  *The trial court did not err in granting Kasap's motion to set aside the jury damages verdict on the fraud claim, or entering an order of remittitur, but did err in reducing the damages to $0.*

Paralleling Kasap's previously discussed assignment of error, Haire asserts the trial court erred in granting Kasap's motion to set aside the jury verdict on the fraud claim, entering an order of remittitur, and reducing the damages to $0.  For the reasons already stated, the trial court's remittitur of damages to $24,000 is affirmed but the trial court's finding that Kasap satisfied the damages is reversed and remanded.

B.  *The trial court did not err in granting Kasap's motion to strike Haire's Count II claims based on the statute of limitations.*

Haire contends the trial court erred in granting Kasap's motion to strike Count II of Haire's amended derivative complaint ("Violation of Virginia Code § 13.1-1024.1") based on the statute of limitations.[4]  The applicability of the statute of limitations is a question of law, which this Court reviews de novo.  *See Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*, 283 Va. 456, 459 (2012); *Van Dam v. Gay*, 280 Va. 457, 460 (2010); *Willard v. Moneta Bldg. Supply*, 262 Va. 473, 477 (2001).  Haire asserts the trial court incorrectly ruled that the continuing services doctrine did not toll the limitations period of Code § 13.1-1036 with respect to a number of Kasap's alleged unauthorized withdrawals and expenditures.

Generally, the prescribed limitations period "begin[s] to run from the date the injury is sustained in the case of injury to the person or damage to property."  Code § 8.01-230; *see also*

---

[4] Although Count II is entitled "Violation of Virginia Code § 13.1-1024.1," the count contains allegations that Kasap received wrongful distributions from ACA.  The trial court applied the two-year statute of limitations provided in Code § 13.1-1036 (liability upon wrongful distribution), as opposed to Code § 8.01-248, the statute of limitations for actions that have no prescribed limitations period, such as claims brought under § 13.1-1024.1.  Under either statute, however, the limitations period would be two years, and both parties agree that the statute of limitations is two years.

- 11 -

*Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 124 n.7 (2017). When a new act causes separate damage, a new limitations period begins for that new act and does not restart the limitations period for the original act. *Forest Lakes Cmty. Ass'n*, 293 Va. at 124 ("It is possible for a new cause of action to accrue that looks remarkably like an earlier one but is nonetheless a standalone claim in its own right. When this occurs, the damage accompanying the new cause of action sets new accrual starting blocks for a separate limitation period."); *see also Hampton Rds. Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987).

Under the continuing services doctrine (also known as the continuous-representation rule) "when there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run until the termination of the undertaking or agency." *Wilson v. Miller*, 104 Va. 446, 448 (1905).[5] This doctrine "only postpones the accrual date 'with respect to a particular undertaking or transaction' and applies '*only* when a continuous or recurring course of professional services *relating to a particular undertaking* is shown to have taken place over a period of time.'" *Gadams v. Nolde Bakery Condo. Ass'n*, No. 180397, No. 180398, 2019 Va. Unpub. LEXIS 4, at *17 (Va. Feb. 28, 2019) (order) (quoting *Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 230 (2017)) (declining to apply the continuing services doctrine to toll limitations period for claim of breach of fiduciary duties against the board of directors). Normally, this doctrine has been "limited to 'cases stating claims of breach of contract or negligence involving the professional services of physicians, attorneys, and accountants.'" *Id.* at *17 (quoting *Harris*

---

[5] Haire argues that "[t]he trial court adopted *Wilson* and the continuing service doctrine in ruling that Kasap's claims against Haire . . . tolled the statute of limitations for those claims thereby making it the law of the case." As such, he claims the trial court should have similarly applied *Wilson* to Haire's claim to toll the statute of limitations. The law of the case doctrine, however, applies only after an appeal and determines the law of the case in subsequent proceedings. *See Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008); *Va. Imports, Ltd. v. Kirin Brewery of Am., LLC*, 50 Va. App. 395 (2007). This Court declines to address whether the trial court erred in applying the continuing services doctrine to Kasap's claims against Haire, as that issue has not been raised on appeal.

*v. K & K Ins. Agency*, 249 Va. 157, 161 (1995)).  The continuing services doctrine, thus, has been narrowly applied and has never been applied to a breach of fiduciary duty claim against a member of an LLC.  *See Moonlight Enters., LLC*, 293 Va. at 236 ("[A]ny expansion of *Keller*'s continuous-representation rule should be resolved by the legislative, not judicial, process."); *Gadams*, 2019 Va. Unpub. LEXIS 4, at *17-18 ("[T]he continuous undertaking rule has not previously been applied to toll the accrual of a cause of action in circumstances" involving a claim of breach of fiduciary duty against a corporate member/manager.).

This Court declines to apply the continuing services doctrine to this case, as doing so would extend the doctrine "beyond its judicially-recognized parameters." *Moonlight Enters., LLC*, 293 Va. at 236.  Hence, the trial court did not err in granting Kasap's motion to strike Count II of the amended derivative complaint based on the statute of limitations.

> C. *The trial court did not err in granting Kasap's motion to set aside the jury verdict on the breach of fiduciary duty claim.*

Next, Haire posits the trial court erred in granting Kasap's motion to set aside the jury verdict on the breach of fiduciary duty claim.  Specifically, Haire argues the court erred in finding that Don Coker "had not testified that ACA would have qualified for a lower interest rate loan at the time of the relevant transactions" and in finding that Coker's estimate of damages was "based entirely on statistics and assumptions."

"When a trial court sets aside a jury verdict, the verdict is not entitled to the same weight as one approved by the court." *Fobbs v. Webb Bldg. Ltd. P'ship*, 232 Va. 227, 230 (1986). "[T]he trial court's authority to set aside a jury verdict 'can only be exercised where the verdict is plainly wrong or without credible evidence to support it.'" *Henderson*, 245 Va. at 480 (quoting *Lane*, 220 Va. at 581).  This Court "must give the party who received the favorable verdict 'the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom.'" *Fobbs*, 232 Va. at 230 (quoting *Walton*, 168 Va. at 423).  "If several

- 13 -

inferences may be drawn from the evidence, though they may differ in degree and probability, we adopt those most favorable to the plaintiff 'unless they are strained and forced or contrary to reason.'" *Brown v. Hoffman*, 275 Va. 447, 449 (2008) (quoting *West v. Critzer*, 238 Va. 356, 357 (1989)).

In a breach of fiduciary duty case, the plaintiff below "had the 'burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery.'" *SunTrust Bank v. Farrar*, 277 Va. 546, 554 (2009) (quoting *Shepherd v. Davis*, 265 Va. 108, 125 (2003)). "[A] plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages." *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 189 (2006). Damages cannot be recovered if derived from uncertainties, contingencies, or speculation. *SunTrust Bank*, 277 Va. at 554. Furthermore, "expert testimony is inadmissible if the expert fails to consider all the variables that bear upon the inferences to be deduced from the facts observed." *Vasquez v. Mabini*, 269 Va. 155, 160 (2005).

The trial court granted Kasap's motion to set aside the jury verdict as to the breach of fiduciary duty claim, finding that Don Coker, Haire's banking expert, provided only speculative damages.[6] On appeal, Haire challenges the trial court's decision, and Kasap maintains Haire failed to prove any damages.[7] At trial, Coker testified that he "determined that there were better [interest] rates available" than the 6.5% interest rate on the Kasap Loan, specifically those rates

---

[6] In its ruling from the bench, the trial court noted that Coker "was not permitted to testify that ACA would have qualified for a lower interest rate loan at the time of these various transactions due to the fact that that information was not disclosed in his designation."

[7] Kasap also argues that the judgment can be affirmed on alternative grounds. Specifically, Kasap argues he had no duty to refinance the loan. This Court declines to address this argument, as Haire failed to prove these damages regardless of whether a duty to refinance existed.

provided by the Small Business Administration ("SBA"). When asked whether the SBA rates would have been available to ACA, Coker testified, "It's my opinion that those rates would have been available to ACA. . . . I saw no reason why they would not be able to obtain those rates." In addition to testifying about the SBA rates, Coker opined that another way to get to the prevailing interest rate is through a buydown of interest rates and provided calculations of the amount of money ACA would have had to pay to achieve such buydown. On cross-examination, Coker testified that, regardless of the available interest rates, whether a lender is approved depends on multiple factors, but he did not address these factors in his testimony. Coker also testified that, during the pandemic, lenders became more risk-adverse in loaning money. Finally, Coker testified that he did not consider the interest rates that were available through a commercial bank, nor did he provide evidence as to whether ACA would have qualified for the government program.

The trial court's finding that Coker only provided damages evidence amounting to speculation is supported by the record. First, there was no evidence ACA could have obtained a more favorable loan. Coker did not address the factors as applied to ACA in a bank's decision to extend credit. Additionally, Coker did not consider commercial interest rates and only considered the rates provided by the SBA. Likewise, Coker did not provide any testimony on whether ACA would have qualified for the SBA program. Second, the buydown measure of damages, as applied in this case, is an improper measure of damages.[8] Haire argues that the buydown measure is proper because it "show[s] the cost ACA incurred by missing the historically low interest rates when Kasap refused to consider refinancing." Coker's testimony,

---

[8] In his reply brief, Haire argues the buydown measure of damages is a proper method used by courts and is not speculative; however, Haire only cites to cases in other jurisdictions. This Court declines to make an advisory determination whether the buydown measure is an improper method in every case.

however, only provided the amount of money ACA would have had to have in order to buydown the interest rate and not the amount of money ACA could have saved had ACA accomplished a buydown. Thus, the trial court did not err in granting the motion to set aside the jury verdict on the breach of fiduciary duty claim.

   *D. The trial court did not err in denying Haire's claim for punitive damages.*

The only cause of action for which Haire prevailed against Kasap was the judgment for fraud remitted to $24,000. "Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 685 (1967). "If reasonable persons, upon the facts presented, could [not] differ regarding whether the conduct in question was so willful and wanton as to show a conscious disregard for the rights of others, 'the trial court may [then] remove the issue of punitive damages from the jury's consideration.'" *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 346 (2003) (quoting *Huffman v. Love*, 245 Va. 311, 315 (1993)). "[P]unitive damages are generally not favored and 'should be awarded only in cases involving the most egregious conduct.'" *Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 269 Va. 421, 425 (2005) (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992)). "[I]n an action based on fraud . . . punitive damages may be recovered only if there is proof, either direct or circumstantial, showing actual malice." *Jordan v. Sauve*, 219 Va. 448, 453 (1978). "Actual malice, or malice in fact, may be established by showing that the [defendant's] action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another." *Lee v. Southland Corp.*, 219 Va. 23, 27 (1978). Kasap's retention of the $400 monthly rental payments—funds that should have been directed to ACA, in which Haire holds only a 40% minority interest—does not rise to the level of "conscious disregard of the rights of another" and was bereft of proof of malice. With all these principles in mind, the record

- 16 -

supports the trial court's conclusion that "Kasap's actions did not rise to the level required to support punitive damages."

   *E. The trial court did not err in excluding Jeremiah Grant's testimony.*

Haire next asserts the trial court erred in excluding the testimony of his expert witness, Jeremiah Grant. According to Haire, the trial court excluded Grant's declaration based on the incorrect finding that Grant's testimony would be cumulative of Taylor Dean's testimony and would be premised on Coker's prior testimony. Kasap responds that this assignment of error was waived because Haire failed to proffer the expected testimony, and any error was, at most, harmless. A trial court's decision to exclude expert testimony is reviewed for abuse of discretion. *Va. Elec. & Power Co. v. Dungee*, 258 Va. 235, 258 (1999); *see also May v. Caruso*, 264 Va. 358, 362 (2002).

On appeal, the Court does "not consider testimony excluded by the trial court 'without a proper showing of what that testimony might have been.'" *Rose v. Jaques*, 268 Va. 137, 154 (2004) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 697 (1988)). "The failure to proffer the expected testimony is fatal to [an appellant's] claim on appeal. 'Without such a proffer, [the appellate court] cannot determine the admissibility of the proposed testimony, and, if admissible, whether the court's exclusion of the evidence prejudiced [the party].'" *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006) (second and third alterations in original) (quoting *Holles v. Sunrise Terrace*, 257 Va. 131, 135 (1999)); *see also Rose*, 268 Va. at 154 ("[A]n appellate court has no basis for adjudication unless the record reflects a proper proffer." (quoting *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977))).

While the trial court was considering Kasap's motion to exclude Grant's testimony, Haire proffered that Grant would summarize and identify certain transactions in the ACA QuickBooks file, provide computations regarding those transactions, and present calculations of extra interest expenses ACA sustained as a result of not refinancing its loan. In addition to Haire's verbal proffer,

the trial court had in front of it Grant's expert reports.  Therefore, Haire properly proffered Grant's testimony and did not waive this assignment of error.

This Court must therefore determine whether the exclusion of Grant's testimony was reversible error.  "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict." *Barkley v. Wallace*, 267 Va. 369, 374 (2004).  This Court "consider[s] the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Id.*  Introduction of evidence that is simply cumulative "may be limited by the court." *Massey v. Commonwealth*, 230 Va. 436, 442 (1985); *see also May*, 264 Va. at 363 ("It is well settled in this jurisdiction that the exclusion of evidence favorable to a party in a civil action on the ground that it is repetitious and cumulative is a matter within the sound discretion of the trial court and that its ruling is entitled on review to a presumption of correctness." (quoting *Harrison v. Commonwealth*, 244 Va. 576, 585 (1992))).  Additionally, "[e]xpert testimony is inadmissible if such testimony is speculative or founded upon assumptions that have no basis in fact." *Va. Fin. Assocs. v. ITT Harford Grp., Inc.*, 266 Va. 177, 183 (2003).

The trial court ruled that Grant's identification of certain QuickBooks entries was cumulative of Dean's testimony and was unnecessary, given that the QuickBooks entries had already been made a part of the record.  With respect to Grant's testimony regarding the damages ACA suffered as a result of not refinancing the loan, the trial court excluded such testimony, highlighting the concern that Grant "based his opinion on his understanding that Coker will testify [ACA] could have refinanced," which Coker did not do.

Haire argues Grant's testimony regarding the identification of certain transactions made by Kasap would not have been cumulative because Dean was Kasap's expert witness, testified adversely to Haire, and identified different transactions important to Kasap's case.  Grant's

testimony may not have been cumulative, but it is unclear how Haire was prejudiced by the exclusion of this testimony. Although Dean was Kasap's expert witness and focused on different transactions, the QuickBooks entries had already been admitted as part of the record, which counsel could point to during closing.

With respect to Grant's testimony regarding damages based on Coker's calculations, the trial court did not err in excluding such testimony as speculative. In his expert witness report, Grant stated that it was his "understanding that Mr. Don Coker will testify that ACA could have refinanced the loan at an interest rate of 2.955% in April 2020 or 2.744% in August 2021, [the interest rates provided by a government-run program]." As detailed previously, Coker only provided testimony based on speculation regarding ACA's ability to get a lower interest rate. Grant's testimony based on the interest rates Coker provided would have been merely speculative, given that no evidence showing that ACA could have refinanced at those rates was presented. Thus, the trial court did not err in excluding Grant's testimony, and any error was at most harmless.

### F. The trial court did not err in denying Haire's motion for an award of expenses and attorney fees.

Haire maintains that upon being successful on any derivative claim, the trial court was compelled to award fees. The relevant statute, however, makes such an award discretionary rather than mandatory. Code § 13.1-1045 (stating a trial court "may award" reasonable expenses including attorney fees). Therefore, the provision does not operate as a fee shifting vehicle. "An award of attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." *Joynes v. Payne*, 36 Va. App. 401, 429 (2001). "[T]he key to a proper award of counsel fees" is "reasonableness under all of the circumstances revealed by the record." *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985).

Considering that Haire only prevailed on one discrete claim and for a relatively attenuated amount, the record does not support that the trial court abused its discretion in declining to award him attorney fees.

> G. *The trial court did not err in dismissing Haire's claim for dissociation because the trial court's factual findings do not support dissociation.*

Haire next argues the trial court erred in dismissing his claim for dissociation of Kasap under Code § 13.1-1040.1(5). The trial court struck the dissociation claim on the basis that section 7.4 of the Operating Agreement "provide[d] the means by which expulsion can take place." Haire asserts the trial court improperly admitted and relied on the Agreement, given that the Agreement was missing page 11, which could have contained material terms. This Court finds that the admission of the Agreement was not error.

> While a contract to be valid and enforceable must be so certain that each party may have an action upon it, reasonable certainty is all that is required. So where a contract is to some extent uncertain and ambiguous, it may be read in the light of surrounding circumstances, and if, reading it thus, its meaning may be gathered, the same will be enforced.

*Smith v. Farrell*, 199 Va. 121, 128 (1957) (quoting 4A M.J. *Contracts* § 27); *see also R.K. Chevrolet v. Hayden*, 253 Va. 50, 55 (1997) ("Further, when the entire agreement has not been reduced to writing, parol evidence is admissible, not to vary or contradict the terms of the written instrument, but to show other facts agreed upon in order to establish the parties' entire contract.").

Here, Kasap moved to admit the Agreement, and Haire objected based on the lack of completeness of the document. The trial court asked that more foundation be laid regarding the Agreement. During questioning by Haire's counsel, Kasap testified that he was not aware that page 11 existed in the document. Kasap noted that the last section on page ten does not end in a full sentence. When asked whether it was possible there was a page 11, Kasap responded,

> From my examination of the operating agreement, I don't believe there is any other page. It's going from 10 to 11 -- 10 to 12, when you looked through the contents of it, all the contents are there. Whatever is missing, it is not a full page, I don't believe. That's -- that's my -- my -- you know, my opinion.

The court admitted the Agreement over objection. It appears that the trial court considered this testimony in making its ruling. Based on Kasap's testimony, the existence of page 11 itself was in dispute. To the extent that page was missing, that was a matter of weight to give to the Agreement, and not a matter of whether the Agreement was admissible. Further, Haire was free to introduce evidence regarding the existence of the alleged missing page. Thus, the trial court did not err in admitting the Agreement over objection.

Haire also asserts the trial court improperly found that the Agreement limited the circumstances under which a member could be dissociated, specifically, in finding that section 7.4 of the Agreement superseded Code § 13.1-1040.1. The interpretation of a statute is subject to de novo review. *Ticonderoga Farms, LLC v. Knop*, No. 1590-22-4, slip op. at 3, 2024 Va. App. LEXIS 325, at *4 (June 11, 2024). Code § 13.1-1040.1 states in relevant part, "Except as otherwise provided in the articles of organization or an operating agreement, a member is dissociated from a limited liability company upon the occurrence of any of the following events: . . . [including] [o]n application by the limited liability company or another member, the member's expulsion by judicial determination." Code § 13.1-1040.1(5). The statute also includes a member's death as an event causing dissociation. Code § 13.1-1040.1(7)(a).

In *Ott v. Monroe*, 282 Va. 403 (2011), *superseded by statute on other grounds*, the Supreme Court of Virginia held that the agreement at issue did not supersede Code § 13.1-1040.1(7)(a), because the agreement failed to "address statutory dissociation" and to "state an intent to supersede Code § 13.1-1040.1(7)(a)." 282 Va. at 410. In short, the agreement "lack[ed] specific language that would constitute an exception to the rule of dissociation set forth

in Code § 13.1-1040.1." *Id.* Kasap contends *Ott* is inapplicable here, arguing that judicial

expulsion is vastly different from death, the dissociation-causing event at issue in *Ott*. It is,

however, arguable that there is no reason why death and judicial expulsion should be treated

differently. The Supreme Court was clear in its holding that specific language addressing

statutory dissociation and stating an intent to supersede Code § 13.1-1040.1 is required in an

agreement to limit the application of the statute. *See id.* at 410.

> Here, section 7.4 of the Agreement states,

> > A Member may be involuntarily removed from the LLC only
> > under either of the following circumstances: (1) the Member is
> > required to provide services to the LLC . . . , said Member is not
> > substantially performing the promised services, and a
> > Supermajority in interest of LLC Members have voted
> > affirmatively for removal or (2) the Member has defaulted upon its
> > obligations under this agreement to make capital contributions (or
> > loans) to the LLC.

Although the Agreement emphasizes that these two events are the exclusive incidents allowing

involuntary removal of a member, Haire argues the Agreement does not expressly state an intent

to supersede the statute, nor does it address statutory dissociation. It is unclear from the

Agreement whether "removal" is synonymous with "dissociation." Additionally, section 7.4

only deals with involuntary rather than voluntary removal. For the operating agreement to

foreclose the statutory remedy of judicial dissociation, it had to state with specific language "an

intent to supersede Code § 13.1-1040.1(6), a subsection not invoked here." *See Kinser v.*

*Benton*, 100 Va. Cir. 215, 220 (Chesapeake 2018). The question before this Court thus narrows

to whether the word "only" states a sufficient intent to supersede the statute so as to affirm or

reverse the judgment of the trial court.

> Under the doctrine of judicial restraint, however, this Court should decide the claim of

dissociation "on the best and narrowest grounds available." *Commonwealth v. White*, 293 Va.

411, 419 (2017). "This principle generally permits the appellate court to resolve an appeal on a

different ground than the one upon which the lower court relied as long as the alternate ruling does not require additional findings of fact." *Qiu v. Huang*, 77 Va. App. 304, 324 (2023). In denying Haire's dissociation of Kasap, the trial court did not restrict its basis to the parties' contract. It considered all the evidence adduced, made credibility determinations, and declined to order Kasap's expulsion. The trial record supports the court's exercise of judgment, for the wrongdoing alleged against Kasap does not amount to the type of substantial harm against the business requiring the grant of dissociation.

### H. This Court declines to address Haire's argument concerning the jury interrogatories, as this assignment of error was waived under Rule 5A:18.

Haire asserts the trial court erred by relying on two allegedly improper jury interrogatories in determining whether there was a contract for a right of first refusal for Haire to purchase the Mt. Vernon Avenue property. Haire waived this assignment of error. Virginia Supreme Court Rule 5A:18 states "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.*

In his opening brief, Haire argues the jury interrogatories were flawed in that they both asked the jury to decide whether a contract was formed "prior to" the 1999 purchase of the Mt.

Vernon property or "prior to" Haire joining ACA. Haire also notes, "[a]fter trial, Kasap conceded that the evidence was that the contract, if it had existed, would have occurred *at the time of* his joining of ACA." From his brief, Haire seemingly asserts the trial court should have replaced "prior to" with "at the time of," but the objection raised at trial does not appear to reflect this argument.

At trial, Haire stated the jury should have the authority to decide when a contract for a right of first refusal was formed during the 20-year period of Haire and Kasap's relationship, given the allegations that a promise of a right of first refusal was made repeatedly from 1999-2020. Confusingly, when asked again by the trial judge what Haire's objection was, Haire stated, "Because they're both prior to joining ACA" but did not specifically indicate whether "prior to" needed to be replaced with "at the time of." Haire did not proffer an alternative jury interrogatory. This Court does not know of any case requiring an objecting party to proffer an alternative jury interrogatory; however, Haire's objection did not clearly articulate to the trial court whether Haire was requesting an interrogatory asking the jury to determine if a contract was formed at the time of the 1999 purchase and joining ACA or if a contract was formed at any time between 1999-2020. The trial court cannot be expected to intuit the precise objection when it is not clearly stated or construct a litigant's case when the litigant has not sufficiently done so. *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) ("Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'" (alteration in original) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010))). Thus, Haire's assignment of error regarding the jury interrogatories is deemed waived pursuant to Rule 5A:18.

*I. This Court declines to decide whether the trial court erred in sustaining the demurrer to Haire's claim for declaratory judgment relief, as the assignment of error was not preserved and was waived under Rule 5A:20.*

Under assignment of error IX, Haire contends "[t]he trial court committed reversible error by sustaining Appellees' demurrer and dismissing with prejudice Haire's claim (Count II from the original Complaint) for declaratory judgment relief regarding . . . the 'Richmond Highway property.'"[9]  This Court, however, declines to address this assignment of error, as it was not preserved.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."  Rule 5A:18.  "An appellate court can only 'determine whether or not the rulings and judgment of the court below . . . were correct.'"  *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (alteration in original) (quoting *Jackson v. Chesapeake & Ohio Ry. Co.*, 179 Va. 642, 651 (1942)).  In the opening brief, an appellant must include a section entitled "Assignments of Error" that "list[s], clearly and concisely and without extraneous argument, *the specific errors* in the rulings below."  Rule 5A:20(c) (emphasis added).  "An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient."  *Mercer v. Commonwealth*, No. 1193-21-4, slip op. at 9, 2023 Va. App. LEXIS 197, at *11 (Mar. 28, 2023) (alteration in original) (quoting Rule 5A:20(c)(2)).  "Assignments of error listed in the opening brief of appellant are binding on the appellant for substantive purposes, unless the Court has granted a motion to amend."  Rule 5A:20(c)(4).  Here, Haire contends the trial court erred by sustaining the demurrer to Count II of the original complaint

---

[9] The demurrer to the original complaint was sustained with leave to amend, and Haire did include Count II in the amended complaint.  Such count stood upon the same allegations as provided in the original complaint.

with prejudice; however, the trial court instead sustained the demurrer with leave to amend. Because the error alleged never occurred below, the assigned error was not preserved.[10]

> *J. This Court declines to decide whether the trial court erred in denying Haire's motion for default judgment and granting Kasap and ACA's motion for leave to file a late responsive pleading, as this assignment of error was waived under Rule 5A:20(e).*

Haire argues the trial court erred "by ruling against Haire's motion for default judgment" and "by granting Appellees' motion for leave to file a late responsive pleading." Kasap demurred to both the original complaint and the amended complaint. Kasap also filed a plea in bar to the amended complaint, but he failed to file an answer within 21 days after the ruling on the plea in bar. *See* Rule 3:8(b) (requiring defendants to file an answer within 21 days after a court has entered an order overruling all other responsive pleadings). Haire filed a motion for default judgment and asked that the $1.2 million property at issue be sold to Haire. Kasap and ACA then filed a motion for leave to file a late responsive pleading, arguing that their failure to file an answer was an

---

[10] It may be that counsel made an inadvertent mistake in stating the assignment of error in the opening brief, but appellant never requested leave to amend, and this Court is bound by appellant's assignment of error as stated in the opening brief. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *Forest Lakes Cmty. Ass'n*, 293 Va. at 122-23 ("An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal. With the assignment of error, an appellant should 'lay his finger' on the alleged misjudgment of the court below. Martin P. Burks, Common Law and Statutory Pleading and Practice § 425, at 827 (T. Munford Boyd ed., 4th ed. 1952). . . . Like a well-crafted pleading, assignments of error set analytical boundaries for the arguments on appeal, provide a contextual backdrop for our ultimate ruling, and demark the stare decisis border between holdings and dicta."). Further, in light of this ruling, this Court does not reach the additional issue of whether the assignment of error is waived for noncompliance with Rule 5A:20(e). *See Rebh v. Cnty. Bd. of Arlington Cnty.*, ___ Va. ___, ___ (Nov. 27, 2024) ("Rendering advisory opinions 'represent[s] an attenuated exercise of judicial power in which this Court "traditionally declines to participate."'" (alteration in original) (quoting *Hunter v. Hunter*, 298 Va. 414, 436 (2020))).

- 26 -

inadvertent mistake and that a late answer would not prejudice Haire. The trial court ruled on the two motions based on the pleadings and did not hear oral argument.[11]

"A defendant who fails to timely file a responsive pleading as prescribed in Rule 3:8 is in default," and a plaintiff may move the court for entry of a default judgment. Rule 3:19(a). Although Virginia Supreme Court Rule 1:9 provides that "[t]he time allowed for filing pleadings may be extended by the court in its discretion," "[w]hen a defendant is in default, Rule 3:19(b) limits the circuit court's discretion to grant further leave to file a responsive pleading for 'good cause shown.'" Rule 1:9; *Rosson v. Erie Ins. Exch.*, 79 Va. App. 266, 282 (2023); Rule 3:19(b) ("Prior to the entry of judgment, for good cause shown the court may grant leave to a defendant who is in default to file a late responsive pleading."). Therefore, appellate courts review a trial court's decision to grant or deny leave to file a late pleading under an abuse of discretion standard. *Primov v. Serco, Inc.*, 296 Va. 59, 70-71 (2018).

Haire asserts the trial court erred because there was no good cause for Kasap and ACA's failure to answer and because the granting of Kasap and ACA's motion prejudiced Haire. This Court, however, declines to determine whether the trial court erred on this issue because this assignment of error was waived under Virginia Supreme Court Rule 5A:20(e). Haire's opening brief does not provide any argument as to how Haire suffered prejudice or why good cause did not exist for Kasap and ACA's failure to answer. Haire merely asserts he "could not issue contention interrogatories on statements in the answers" and that the trial court granted Kasap and ACA's

---

[11] The trial court issued a letter opinion detailing the reasons for denying Haire's motion and later entered an order incorporating such letter opinion. In its letter opinion, the trial court noted that the case in which the default judgment was sought was proceeding at the same time as two other related cases. The trial court also noted that the default judgment motion was "only brought to the Court's attention some three (3) months" after the date on which the answer would have been due and with less than a month before trial, even though multiple hearings had been held with "ample opportunity for the default to have been raised." Finally, the trial court found that "the neglect causing the default was due to inadvertence," there was no bad faith, and there was good cause to allow a late responsive pleading.

motion "despite the obvious prejudice to Haire's legal interests."  Thus, Haire's tenth assignment of error was waived under Rule 5A:20(e).

## CONCLUSION

Accordingly, this Court reverses the trial court's remittitur of the fraud claim damages against Kasap to $0 and directs the trial court to enter an order awarding Haire $24,000 in damages.  The trial court's remaining rulings are affirmed.  The case is remanded for entry of final judgment on the fraud claim against Kasap consistent with this opinion.

*Affirmed in part, reversed in part, and remanded for final judgment.*